THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
SOLOMON JOHNSON, Defendant-Appellant.

First District (5th Division)   No. 79-1132

Opinion filed August 1, 1980.

James J. Doherty, Public Defender, of Chicago (Marc Fogelberg, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Thomas J. Leanse, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

After a jury trial, defendant was convicted of aggravated battery (Ill. Rev. Stat. 1977, ch. 38, pars. 12—4(a), 12—4(b)(1)) and sentenced to a term of 4 years imprisonment with 1 year mandatory supervised release. On appeal, he contends that (1) the jury should have been instructed on the right to defend against the commission of a forcible felony; (2) the trial court erred in precluding part of his testimony on hearsay grounds, and (3) the conviction for aggravated battery and acquittal for armed violence are legally inconsistent. We affirm the trial court.

Phillip Smith, 5 foot 3 inches tall and weighing 120 pounds, testified

that he was in the Mellownetts Lounge (Melody Nets) on May 7, 1978. He had a couple of drinks and then attempted to leave. A car was blocking his car so he returned to the lounge and had the disc jockey announce the license number of the blocking car. Smith had another drink and again checked his car. It was still blocked so he returned to the lounge and went to the washroom. Inside the washroom, Smith saw the defendant, Johnny Blakemore and Larry McElroy. Blakemore accused Smith of liking white people. Smith then threatened to smash a glass on Blakemore's face. Blakemore did not respond to Smith's threat. Instead, defendant stabbed Smith in the stomach and forearm. Further, he threatened to kill Smith if he came out of the washroom. Defendant and the others then left.

Smith was taken to St. James Hospital with two stab wounds in his abdomen and one wound on his forearm. Smith denied being drunk, but Dr. James McLean testified in his opinion Smith was drunk.

Defendant testified that on the date in question he was 5 feet 11 inches tall and weighed 192 to 194 pounds. He, Blakemore and McElroy had gone to the Melody Nets Lounge about 11 or 11:30 p.m. and had one beer and left. They purchased three cans of beer from a tavern across the street and returned to the lounge washroom to drink them. He further testified that Smith came into the washroom with a glass in his hand and demanded the two dollars that Blakemore owed him. Smith responded that he would kick Blakemore's "a— —." Defendant stated that McElroy told Smith that he would give him the two dollars. Smith then threatened to smash McElroy in the face with the glass. Defendant testified that he approached Smith and told him that they did not want any trouble. Smith then threatened defendant and smashed his glass against defendant's forehead. Defendant then grabbed Smith and threw him up against the wall. He told Smith "to be cool." Smith drew a knife from his pants and defendant wrestled the knife away from him, and jumped back. Smith then charged defendant, threatening to kill him. Defendant swung at Smith with the knife, but Smith grabbed his arm; whereupon he pushed Smith against the wall. The next thing he knew, Smith slid down to the floor bleeding.

McElroy testified that Smith, who was drunk, entered the washroom about five minutes after they did and started an argument with Blakemore. McElroy tried to calm Smith, but he threatened to smash the glass against his head. McElroy further testified that defendant tried to calm Smith, but Smith told him to mind his own business and swung his glass at him, whereupon a struggle ensued. Defendant then forced Smith up against the wall and tried to calm him down. Smith charged at defendant, who pushed him back against the wall. McElroy did not see the glass hit defendant, nor did he see Smith pull a knife. After defendant

backed away, Smith fell to the floor bleeding. Blakemore made a remark, and thereafter, defendant, McElroy and Blakemore left.

## OPINION

Defendant first contends that the trial court committed reversible error when it refused to instruct the jury on the use of deadly force to prevent the commission of a forcible felony. According to his testimony and McElroy's testimony, Smith committed an aggravated battery, a felony, as defined in section 12—4(b)(8) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 12—4(b)(8)). That section provides that a person commits aggravated battery "who, in committing a battery either * * * is, or the person battered is, on or about a public way, public property or public place of accommodation or amusement." Defendant argues that the tavern restroom is public under this subsection. We find this argument to be untenable.

In *Franzese v. Trinko* (1977), 66 Ill. 2d 136, 361 N.E.2d 585, our supreme court stated:

> "The language of a statute must be given its plain and ordinary meaning. 'It is a primary rule in the interpretation and construction of statutes that the intention of the legislature should be ascertained and given effect. [Citations.] This is to be done primarily from a consideration of the legislative language itself, which affords the best means of its exposition, and if the legislative intent can be ascertained therefrom it must prevail and will be given effect without resorting to other aids for construction. [Citations.] * * *
>
> * * * Courts have no legislative powers, and their sole function is to determine and, within the constitutional limits of the legislative power, give effect to the intention of the lawmaking body. We will not and cannot inject provisions not found in a statute, however desirable or beneficial they may be.' (*Droste v. Kerner*, 34 Ill. 2d 495, 504.)" 66 Ill. 2d 136, 139-40, 361 N.E.2d 585, 587.

■■ We believe the intent of the legislature, as expressed by the language of the statute, is not to include a tavern restroom within this subsection of the statute. A tavern is private property open to the public for a limited purpose. To include a tavern restroom within the definition of "public property or public place of accommodation or amusement" (Ill. Rev. Stat. 1977, ch. 38, par. 12—4(b)(8)) would not comport with the legislative intent of the statute.

In *People v. Clark* (1979), 70 Ill. App. 3d 698, 388 N.E.2d 1107, we refused to hold that a battery which occurred on a dirt lane on private property approximately 95 to 100 feet from a public highway was "on or about a public way" so as to be classified under the statute as an

aggravated battery. (Ill. Rev. Stat. 1977, ch. 38, par. 12—4(b)(8).) The lane in question was used as a "turnaround" to reverse directions on the highway, and a parking spot while fishing in a nearby strip pit. To extend the application of the statute to the tavern restroom involved herein could conceivably broaden the implications of the statute to situations clearly not intended to be encompassed within it.

Defendant next contends that the trial court erred in precluding his testimony concerning the out-of-court statement that caused him to leave the tavern. Defendant offered testimony stating that Blakemore said that Smith's family was in the tavern. He argues that this testimony was offered not to prove Smith's family was in the tavern, but to show that he left the tavern after the incident because he feared further violence from Smith's family.

■■ The trial court may have erred in precluding defendant's testimony (*People v. Carpenter* (1963), 28 Ill. 2d 116, 190 N.E.2d 738), but this error was harmless and not grounds for reversal. Defendant's attempted testimony concerning the out-of-court statement contributes very little to his defense and does not appear to be a material factor in his conviction. At the time the alleged statement was made, defendant had already stabbed Smith. Any error therefore, in light of the minor nature of this testimony must be considered harmless (*People v. Stokes* (1979), 75 Ill. App. 3d 813, 394 N.E.2d 681) and not so prejudicial as to cause reversible error. *People v. Olmos* (1978), 67 Ill. App. 3d 281, 384 N.E.2d 853.

■■ Finally, defendant argues that his conviction for aggravated battery is legally inconsistent with the acquittal for armed violence. We disagree. He contends that *People v. Dawson* (1975), 60 Ill. 2d 278, 326 N.E.2d 755, did not overrule *People v. Hairston* (1970), 46 Ill. 2d 348, 263 N.E.2d 840. We believe that *Dawson* did implicitly overrule *Hairston* on the necessity for legally consistent verdicts, although the holdings of both cases were the same.

In *Hairston*, defendant was charged with solicitation and under a statutory theory of accountability with murder and attempted murder. Defendant was convicted on the charge of solicitation and acquitted of murder and attempted murder. He argued that the verdicts were inconsistent. The supreme court found that the verdicts were legally consistent and, therefore, defendant was not entitled to discharge. The court did state, however, that:

> "Within our own jurisdiction we have, in those instances where inconsistent verdicts of guilty were returned on separate indictments or separate counts of a single indictment, aligned ourselves with those who hold that a reversal and a new trial must follow." 46 Ill. 2d 348, 361, 263 N.E.2d 840, 849.

In *Dawson*, defendant was charged with murder, felony murder and

armed robbery. He was convicted of armed robbery but acquitted of murder. The appellate court reversed, holding that the verdicts were inconsistent. The supreme court decided that no inconsistency existed in defendant's conviction, as was the holding in *Hairston.*

The court indicated that the appropriate considerations in upholding a verdict:

"* * * are those discussed by Judge Friendly in *United States v. Carbone* (2d Cir. 1967), 378 F. 2d 420:

'The very fact that the jury may have acquitted of one or more counts in a multicount indictment because of a belief that the counts on which it was convicted will provide sufficient punishment, see *Steckler v. United States, supra,* 7 F. 2d at 60, forbids allowing the acquittal to upset or even to affect the simultaneous conviction. * * * Indeed, if the rule were otherwise, the Government would be entitled to have the jury warned that an acquittal on some counts might undermine a guilty verdict on others * * *'." *Dawson,* 60 Ill. 2d 278, 280-81, 326 N.E.2d 755, 757.

Like the holdings in both *Hairston* and *Dawson,* we too find no legal inconsistency in these verdicts. It appears that the legislature intended, in passing the armed violence statute, to create an additional offense for which a defendant could be charged and convicted when he committed any felony while armed with a specific type of dangerous weapon.[1] Therefore, armed violence and aggravated battery are two separate offenses. Thus, the verdicts here are legally consistent, if not logically so. *Hairston,* 46 Ill. 2d 348, 263 N.E.2d 840.

But even assuming the verdicts were legally inconsistent, we have held that Illinois does not require legal or logical consistency in verdicts. And that such inconsistency, even if it exists, does not require reversal of defendant's conviction. (*People v. Jimerson* (1979), 69 Ill. App. 3d 403, 388 N.E.2d 10.) As our supreme court stated in *Dawson:*

"* * *[A]llowing inconsistent verdicts in criminal trials runs the risk that an occasional conviction may have been the result of compromise. But the advantage of leaving the jury free to exercise its historic power of lenity has been correctly thought to outweigh that danger. [Citations.]" 60 Ill. 2d 278, 281, 326 N.E.2d 755, 757.

Defendant further maintains that appellate courts for the Fourth and Fifth Districts continue to apply the *Hairston* rule. (See *People v. Mullinax* (1979), 67 Ill. App. 3d 936, 384 N.E.2d 1372; *People v. Lucien* (1978), 66 Ill. App. 3d 280, 383 N.E.2d 735.) It must be noted, however, that subsequent decisions in both of these districts hold that multiple

---

[1] Section 33A—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 33A—2) provides that: A person commits armed violence when, while armed with a dangerous weapon he commits any felony defined by Illinois law.

verdicts may stand even though they are legally inconsistent. See *People v. Barker* (1979), 78 Ill. App. 3d 686, 397 N.E.2d 552; *People v. Rogers* (1979), 77 Ill. App. 3d 989, 397 N.E.2d 28.

For the reasons set forth above, the jury's verdict and the judgment thereon are affirmed.

Affirmed.

LORENZ and MEJDA, JJ., concur.