THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JAMES LAVAS, Defendant-Appellant.

First District (1st Division)   No. 81—1181

Opinion filed February 7, 1983.—Rehearing denied March 28, 1983.

James J. Doherty, Public Defender, of Chicago (Emily Eisner, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Bruce A. Cardello, and Larry J. Crown, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GOLDBERG delivered the opinion of the court:

After a jury trial, James Lavas (defendant) was convicted of aggravated battery and battery. He was found not guilty on two counts of armed robbery, two counts of armed violence, and three additional counts of aggravated battery. Defendant was sentenced to four years for aggravated battery and "up to one year" for battery, to run concurrently. Defendant appeals.

In their testimony, the two complainants corroborated each other on most important points. Both testified they were walking home together from a "gay disco" at about 3 a.m. on February 23, 1980. Complainant Lindblad testified he had previously injured his ankle. He leaned on complainant Bartczyzyn for support. Complainants were called by two men standing in a well-lighted gangway. One or both of these men directed obscenities to the complainants. These two men held metal rods or pipes. The men were identified as defendant and Joseph Ganshirt.

Ganshirt, an accomplice of defendant, testified for the State. After plea bargaining, Ganshirt pleaded guilty and was sentenced to the work release program for two months and to probation for four years.

After receiving threats, complainant Lindblad gave the defendant $10 or $11. Bartczyzyn told defendant he had only some change. Ganshirt struck at Bartczyzyn with his rod. Bartczyzyn blocked the blow and struck Ganshirt with his right hand. A car approached and Lindblad ran to the car. Defendant struck Bartczyzyn on the back of his head with a rod. The police arrived in a few minutes. Bartczyzyn was X-rayed at the hospital. Thirteen stitches were required for his head wound.

At a lineup in the police station, Bartczyzyn could not identify the defendant but still stated he thought defendant was one of his attackers. Lindblad saw defendant strike Bartczyzyn on the back of the head with a metal pipe. He identified defendant at the police lineup and in court.

The accomplice Ganshirt testified he was with defendant and three other men. They saw the two complainants. Defendant demanded money from the complainants. Defendant struck one of the complainants with a pipe. Ganshirt testified he did not see any money pass from one man to another.

The defendant called police investigator Paul. He conducted the

lineup that night. Bartczyzyn could not positively identify defendant because he was too busy fighting off Ganshirt, the accomplice. Lindblad identified defendant without doubt. The officer also testified Ganshirt told him verbal advances of a sexual nature were made by the complainants.

Daniel Duran testified he was with defendant and Ganshirt. He saw defendant and Ganshirt confront the complainants. Ganshirt held a pipe but defendant was not armed. Ganshirt hit one of the complainants with a pipe. A scuffle started and the witness fled. He did not see any money change hands.

Defendant testified he was in the car with Ganshirt, Duran and three other people. Ganshirt left the car with a pipe in his hand. Defendant asked the other men to stop Ganshirt but no one cooperated. Defendant followed Ganshirt alone. Defendant was unarmed. Defendant asked Ganshirt to return to the car but the latter refused. Ganshirt then hit one of the complainants with a pipe. A fight ensued and defendant testified, "I just jumped on the guy, you know." Defendant denied he hit any person with a pipe and denied he asked complainants for money.

I

■ Defendant urges inconsistency between the verdicts of acquittal and those of guilt. It is the settled law of Illinois that neither legal nor logical consistency is required in the verdicts of a jury. The only issue is whether the verdict of guilt is properly supported by the evidence. We find this proposition firmly established in *People v. Dawson* (1975), 60 Ill. 2d 278, 280-81, 326 N.E.2d 755. *Dawson* has been followed by this court in a number of cases including *People v. Harris* (1982), 104 Ill. App. 3d 833, 840, 433 N.E.2d 343, *People v. Brandstetter* (1982), 103 Ill. App. 3d 259, 272, 430 N.E.2d 731, *appeal denied* (1982), 91 Ill. 2d 561, *People v. Depper* (1980), 89 Ill. App. 3d 135, 138, 411 N.E.2d 543, and *People v. Johnson* (1980), 87 Ill. App. 3d 306, 310, 409 N.E.2d 48. We reject defendant's contention.

On the issue of reasonable doubt, the defendant in effect testified he was attempting to prevent the incident but he still remained to become an active participant in the fight. The testimony of the two complainants is strong and unimpeached and sufficient in itself to constitute proof of defendant's guilt beyond a reasonable doubt. Also, the uncorroborated testimony of an accomplice is sufficient to convict. (*People v. Wilson* (1977), 66 Ill. 2d 346, 349, 362 N.E.2d 291.) This is true even though the accomplice testified he expected leniency. (*People v. Brisbon* (1980), 89 Ill. App. 3d 513, 526, 411 N.E.2d 956, *ap-*

*peal denied* (1981), 82 Ill. 2d 586, *cert. denied* (1981), 451 U.S. 990, 68 L. Ed. 2d 849, 101 S. Ct. 2328.) In the instant case the accessory testified he had received leniency. However, the testimony of the accomplice in the case before us is most strongly corroborated by the testimony of the two complainants and to a limited extent by defendant's own testimony. A reviewing court should "not disturb the jury's verdict of guilty unless the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of defendant's guilt." *People v. Lewis* (1981), 88 Ill. 2d 129, 151, 430 N.E.2d 1346.

The record before us convinces us strongly that the guilt of defendant of aggravated battery and battery has been entirely proved beyond reasonable doubt and to a moral certainty.

## II

The trial court refused to allow introduction of defendant's previous conviction for possession of a controlled substance. However the judge inadvertently read to the jury the following instruction to which the court had sustained defendant's objection (Illinois Pattern Jury Instructions, Criminal, No. 3.13 (1968)):

> "Evidence of the defendant's previous conviction of a crime is to be considered by you only insofar as it may affect his credibility as a witness, and must not be considered by you as evidence of his guilt of the crime with which he is charged."

Immediately after the jury retired for deliberations, counsel for defendant informed the trial judge of his error in reading the above quoted instruction. The judge took that instruction from the group of written instructions to be given the jury and made the following statement to the jury:

> "Ladies and gentlemen, I am giving you the written instructions that I have along with the evidence; and you are instructed to follow the written instructions on the law as they are written here. If I misread -- and I might have because, you know, when you go through a number of instructions, it is very possible that I misread one of the instructions or read something to you that really isn't here -- but you follow the instructions as written in these forms. Okay."

Defendant argues the reading of the refused instruction by the trial judge was prejudicial and constituted reversible error. We disagree.

In *People v. Lewis* (1979), 75 Ill. App. 3d 259, 286, 393 N.E.2d 1098, *appeal denied* (1979), 79 Ill. 2d 623, we held the inadvertent reading of an instruction which had been withdrawn by the prosecu-

tion, was harmless when only the proper instructions were given in writing to the jury before its deliberations.

In *Lewis*, we do not find that the trial court expressly admonished the jury to consider only the instructions as written. In *Lewis*, this court stated (75 Ill. App. 3d 259, 286):

> "In the case at bar, the error in the reading of the instructions was corrected by the submission of correct, written instructions to the jury in the jury room. Thus, we find that the inadvertent reading of the instruction in question was harmless error."

Following *Lewis*, in *People v. Gomez* (1980), 80 Ill. App. 3d 708, 399 N.E.2d 1368, *appeal denied* (1980), 81 Ill. 2d 585, the trial court inadvertently read to the jury an instruction which had been tendered by defendant but then withdrawn. No objection was made by defendant until the jury had begun to deliberate. The trial court immediately recalled the jury and admonished them that the instruction in question should be disregarded. Citing *Lewis*, this court held that the prompt action of the trial court "coupled with the fact that only correct, written instructions had been submitted to the jury renders this error harmless." 80 Ill. App. 3d 708, 713.

Defendant cites *People v. Wilson* (1976), 43 Ill. App. 3d 583, 357 N.E.2d 81, *appeal denied* (1977), 65 Ill. 2d 579, and *People v. McCauley* (1972), 2 Ill. App. 3d 734, 277 N.E.2d 541. In *Wilson*, the trial judge failed to read the same limiting instruction regarding the defendant's previous conviction which was read inadvertently in the case at bar. We reversed defendant's conviction because "[t]here [was] nothing in the record which affirmatively show[ed] that [the proper instruction] did in fact go to the jury room." 43 Ill. App. 3d 583, 585. See also *People v. Lewis* (1979), 75 Ill. App. 3d 259, 286.

In *McCauley*, defendant was charged with battery of a police officer. However, the jury was mistakenly instructed regarding the crimes of attempted escape, and resisting arrest. We held giving of the instructions regarding specific crimes for which defendant was not charged, was error. *People v. McCauley* (1972), 2 Ill. App. 3d 734, 736.

In the case at bar it is undisputed the trial judge gave only the proper written instructions to the jury. The jury was expressly admonished by the trial judge to consider only the instructions tendered them in written form, therefore, the case is distinguishable from *Wilson* and *McCauley*. We find no error in this regard.

## III

Defendant contends the trial court erred in not allowing defend-

ant to question the defense witness Daniel Duran concerning the reputation of a previous witness, Joseph Ganshirt, for truthfulness, and in not allowing Ganshirt to refresh his recollection with a police report.

While being cross-examined, Ganshirt was asked whether he had told Officer Paul that the fight ensued after complainants had made "verbal advances." The witness replied he could not remember. Defense counsel was not allowed to show Ganshirt Officer Paul's police report to refresh his recollection.

"The manner and mode of refreshing recollection is within the sound discretion of the trial court." (*People v. Black* (1980), 84 Ill. App. 3d 1050, 1054, 406 N.E.2d 23.) The decision of the trial court will not be disturbed on review absent an abuse of discretion. *People v. Van Dyk* (1976), 40 Ill. App. 3d 275, 279, 352 N.E.2d 327, *appeal denied* (1976), 63 Ill. 2d 562.

■ We find no abuse of discretion here. The witness had no connection with the actual preparation of the report. The officer was unavailable to establish the veracity of the report. In any event, there could not have been prejudice to defendant. Police Investigator Paul testified later, and he related Ganshirt's prior inconsistent statement. Therefore, the impeachment was perfected and was fully before the jury even without the witness having Ganshirt inspect the police report.

Similarly, the determination of a sufficient basis of knowledge of a reputation witness is within the discretion of the trial court. (*People v. Bingham* (1979), 75 Ill. App. 3d 418, 427, 394 N.E.2d 430.) In the case at bar, defendant did not make an offer of proof as to the specific basis of the witness' knowledge of Ganshirt's reputation. *People v. Bingham* (1979), 75 Ill. App. 3d 418, 428; see also *People v. Dorff* (1979), 77 Ill. App. 3d 882, 888, 396 N.E.2d 827, *appeal denied* (1980), 79 Ill. 2d 632.

■ In addition, this attempted impeachment of Ganshirt would have been strictly cumulative. "A trial court has the power to exclude evidence which is cumulative." (*People v. Aldridge* (1981), 101 Ill. App. 3d 181, 185, 427 N.E.2d 1001, *appeal denied* (1982), 88 Ill. 2d 552.) Consequently we find no prejudice to defendant. Ganshirt was impeached extensively by defense counsel. The jury was aware of his criminal involvement in the instant crime, his admission of guilt, and his prior inconsistent statement to the police investigator. Furthermore, the jury was specifically instructed to scrutinize Ganshirt's testimony with suspicion because of these factors. Testimony as to the witness' general reputation for veracity would not significantly alter

the jury's impression of his testimony. The jury verdicts were eminently fair to defendant.

For these reasons it is ordered that the judgment appealed from is affirmed as regards the conviction for aggravated battery. We add that the maximum sentence for a simple battery, a Class A misdemeanor, is 364 days. (Ill. Rev. Stat. 1981, ch. 38, pars. 12—3, 1005—8—3.) We find the defendant was properly sentenced to only 364 days for this offense, concurrently. The mittimus herein shall be amended to read accordingly. As thus amended the conviction for battery is affirmed.

Judgment affirmed.

BUCKLEY, P.J., and CAMPBELL, J., concur.