THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
CHARLES EDWARD LEE, Defendant-Appellant.

Fourth District    No. 4—87—0097

Opinion filed August 6, 1987.

Daniel D. Yuhas and Karen Munoz, both of State Appellate Defender's
Office, of Springfield, for appellant.

Jeffrey K. Davison, State's Attorney, of Decatur (Kenneth R. Boyle and
Robert J. Biderman, both of State's Attorneys Appellate Prosecutor's Of-
fice, and Frank M. Howard, of counsel), for the People.

JUSTICE LUND delivered the opinion of the court:

After a jury trial, defendant was convicted of the offenses of
battery, aggravated battery, and retail theft under $150. (Ill. Rev.
Stat. 1985, ch. 38, pars. 12—3, 12—4(b)(8); 16A—39(a).) He was sen-
tenced to concurrent terms of two years' imprisonment for aggra-
vated battery and 180 days' imprisonment for retail theft, with 78
days' credit for time served in incarceration. Defendant appeals, ar-
guing his conviction for aggravated battery must be reduced to bat-
tery because the evidence does not show that either he or the com-
plaining witness were on or about a "public place of
accommodation" within the meaning of section 12—4(b)(8) of the
Criminal Code of 1961 (Code) (Ill. Rev. Stat. 1985, ch. 38, par. 12—
4(b)(8)) at the time the battery occurred. We affirm.

According to the evidence presented at trial, defendant entered
Huck's convenience store, an establishment selling gas and oil as

well as grocery items, located on Jasper Street at Cantrell in Decatur, Illinois, at about 2 a.m. on October 3, 1986. He cashed a winning $5 instant lottery ticket and then walked to the back of the store, where he took two 12-pack containers of Coors beer from a display. Defendant did not pay for the beer but attempted to walk out of the store with one of the 12-packs. The complaining witness, the only employee working at the store at the time of the incident, confronted defendant, who said he was going to take the beer. Defendant exited the store and walked onto the parking lot. The complaining witness followed defendant out of the store and—in the parking lot—grabbed defendant around the waist to try to keep him from leaving. Defendant then hit the complaining witness in the head several times with his left fist. During the incident, the 12-pack of beer opened and several cans rolled across the parking lot. Defendant broke loose from the complaining witness and left the parking lot on foot with the remainder of the beer. The complaining witness testified he knew defendant when defendant came into the store on October 3, 1986, because he went to school with defendant.

The complaining witness' testimony was corroborated by Marvin Cook, who testified he had known defendant for five years. Cook testified he saw defendant at about 1:45 a.m. on October 3, 1986, in the parking lot of the Corporation Lounge. Cook testified defendant asked him if he would take defendant to Huck's to cash an instant lottery ticket. Cook said he agreed, telling defendant he needed some gas. Cook testified he drove defendant and Joe Reed to Huck's and waited in his car while the two men went in. Cook testified Reed came out first, and then defendant came out carrying beer. Cook said the store clerk came out of the store and grabbed defendant around the waist, trying to get the beer back; and defendant started hitting the store clerk in the head with his fist. Cook said during the incident the package of beer defendant was carrying broke open and some cans rolled on the parking lot. Defendant carried the remainder of the beer to the car and wanted to leave. Cook said he told defendant he was not going anywhere and defendant thereafter walked off. The store clerk took down the car's license plate number and went back inside the store.

Defendant took the stand in his own defense and testified he did not go to Huck's convenience store on the night of October 3, 1986, and did not take a 12-pack of beer or struggle with the store clerk outside the Huck's store in the parking lot. Defendant also denied seeking Marvin Cook on October 3, 1986. Defendant did not recall where he was on the night of the incident.

Section 12—4(b) of the Code provides in part:

"A person who, in committing a battery, commits aggravated battery if he either:

                        * * *

(8) Is, or the person battered is, on or about a public way, public property or public place of accommodation or amusement ***." (Ill. Rev. Stat. 1985, ch. 38, par. 12—4(b)(8).)

On appeal, defendant contends the statutory reference to "public place of accommodation" does not include the parking lot outside a store or business which falls within this statutory term.

In arguing the parking lot of a public place of accommodation is not a situs within the meaning of the statute, defendant relies on *People v. Johnson* (1980), 87 Ill. App. 3d 306, 308-09, 409 N.E.2d 48, 50. In *Johnson*, the defendant was convicted of aggravated battery under sections 12—4(a) and 12—4(b)(1) of the Code (Ill. Rev. Stat. 1977, ch. 38, pars. 12—4(a), 12—4(b)(1)) based on stab wounds inflicted in the restroom of a lounge. On appeal, the defendant argued the trial court committed reversible error when it refused to instruct the jury on the use of deadly force to prevent the commission of a forcible felony, *i.e.*, the right to defend against the commission of a forcible felony. Defendant argued his testimony and that of another witness showed the victim of the offense had committed an aggravated battery as defined in section 12—4(b)(8) of the Code (Ill. Rev. Stat. 1977, ch. 38, par. 12—4(b)(8)); defendant thereby sought to use the language of this subsection in support of the defense theory of the case and overturn his conviction. The *Johnson* court found the defendant's argument that the lounge restroom was public under this subsection untenable. The facts before us do not require us to comment on the result reached in *Johnson*. The *Johnson* court further stated, however:

"We believe the intent of the legislature, as expressed by the language of the statute, is not to include a tavern restroom within this subsection of the statute. A tavern is private property open to the public for a limited purpose. To include a tavern restroom within the definition of 'public property or public place of accommodation or amusement' [citation] would not comport with the legislative intent of the statute.

*** To extend the application of the statute to the tavern restroom involved herein could conceivably broaden the implications of the statute to situations clearly not intended to be encompassed within it." (*People v. Johnson* (1980), 87 Ill. App. 3d 306, 308-09, 409 N.E.2d 48, 50.)

We disagree with this reasoning.

Aggravated battery is divided into three categories. The offenses within the second category, delineated under section 12—4(b), do not involve great bodily harm or permanent disability or disfigurement. Rather, as stated by the Committee Comments on this section:

> "It involves a battery committed under aggravated circumstances from which great harm might and usually does result (although it did not in the particular case), and therefore it constitutes a more serious threat to the community than a simple battery. The aggravated circumstances are the same as those in the current statutes and in section 12—2, Aggravated Assault, excepting that under section 12—4 a battery is committed." (Ill. Ann. Stat., ch. 38, par. 12—4, Committee Comments—1961, at 465 (Smith-Hurd 1979).)

As stated in *People v. Ward* (1981), 95 Ill. App. 3d 283, 287-88, 419 N.E.2d 1240, 1244:

> "As we interpret this statutory language, the essential allegation for a charge under section 12—4(b)(8) is that the battery occurred in a public area. Whether the property was actually publicly owned and, therefore, 'public property' rather than a privately owned 'public place of accommodation' is irrelevant; what is significant is that the alleged offense occurred in an area accessible to the public."

In *Ward*, the aggravated battery took place in a car in the parking lot of a Holiday Inn.

In *People v. Murphy* (1986), 145 Ill. App. 3d 813, 496 N.E.2d 12, the aggravated battery charged was based on a fight in a bar. The Third District Appellate Court suggested the terms " 'place of public accommodation or amusement' seem to apply generically to places where the public is invited to come in and partake of whatever is being offered therein." (145 Ill. App. 3d 813, 815, 496 N.E.2d 12, 14.) The *Murphy* court further stated:

> "While we doubt that a fight in a bar should be characterized as felonious, nevertheless, the statute appears to go that way.
>
> Finally, defendant argues that the definition of a public place of amusement is, at best, ambiguous as reflected in the [*People v. Johnson* (1980), 87 Ill. App. 3d 306, 409 N.E.2d 48] and *Ward* opinions and as such should be construed strictly in his favor. The court in *People v. Handley* (1983), 117 Ill. App. 3d 949, 454 N.E.2d 350, in determining the constitutionality of the statute stated:
>
> 'The mere fact that the legislature chose a general descrip-

tion of areas frequented by the public ("public way," "public property," or "public place of accommodation or amusement") rather than spelling out each example of a public way or public amusement does not make the statute void for vagueness.' (117 Ill. App. 3d 949, 952, 454 N.E.2d 350, 352.)

Similarly, we do not believe the statute nor the cited cases present an ambiguity which must be resolved in defendant's favor." (145 Ill. App. 3d 813, 815, 496 N.E.2d 12, 14.)

*Cf. People v. Kamp* (1985), 131 Ill. App. 3d 989, 993, 476 N.E.2d 768, 770 (affirming felony murder conviction where underlying felony was aggravated battery as set forth in section 12—4(b)(8) of the Code and victim's body was found in water at bottom of drainage ditch in park open to public).

We find the decision in *Ward* persuasive. There, as here, the defendant's aggravated battery conviction under section 12—4(b)(8) of the Code was based on a battery which occurred in the parking lot of a public place of accommodation. We agree with the reasoning stated in *Ward, i.e.*, our legislature was of the belief that a battery committed in an area open to the public constitutes a more serious threat *to the community* than a battery committed elsewhere. This rationale is supported by the Committee Comments to section 12—4 and by a commonsense approach to interpreting the statutory language in light of the harm it was directed at preventing. We see no logical or reasonable basis for interpreting the language of this subsection so as to distinguish between the premises within the "public place of accommodation" and the parking lot immediately outside its door.

Affirmed.

GREEN and McCULLOUGH, JJ., concur.