THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. OTIS BEASLEY, Defendant-Appellant.

First District (6th Division)   No. 1—97—3103

Opinion filed March 12, 1999.—Rehearing denied September 13, 1999.

Rita A. Fry, Public Defender, of Chicago (Protase M. Tinka, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, James Fitzgerald, and Tasha-Marie Kelly, Assistant State's Attorneys, of counsel), for the People.

JUSTICE ZWICK delivered the opinion of the court:

Defendant, Otis Beasley, was charged with aggravated criminal sexual assault (three counts), criminal sexual assault (three counts) and unlawful restraint. The first counts were predicated on the unlawful restraint charge. Following a jury trial, he was convicted of criminal sexual assault and was sentenced to serve 30 years in the Illinois Department of Corrections. He now appeals, raising the following claims: (1) whether the trial court committed error in not admitting a medical report of the victim's treating physician under the past-recollection-recorded hearsay exception; (2) whether the trial court committed error in not allowing the treating physician more time in order to refresh his recollection or, alternatively, allowing the treating physician to be questioned as a hostile witness; (3) whether defendant was proven guilty by proof beyond a reasonable doubt; and (4) whether defendant's sentence is excessive.

The evidence at trial showed that the complainant was walking home from an Easter Sunday celebration with her friends on April 16, 1995, at approximately 8 p.m. She had several drinks at the party. Eventually she separated from the people with whom she was walking and encountered the defendant, who greeted her and introduced himself as "Otis." According to the complainant, she talked with him briefly, said goodbye and then headed on her way. As she cut through an alley, defendant reappeared and dragged her into an alcove and up against the wall of a nearby building where he forced her to engage in oral, vaginal and anal intercourse. She begged him to stop. However, when she felt something sharp against her neck, she stopped resisting.

Diane Means, one of the State's witnesses who lived near the alcove where the defendant was arrested, testified that she was in her home resting at the time the complainant was walking home. She heard slapping sounds coming from outside and a woman screaming "please don't hurt me, don't hurt me." She looked out the window and decided that the situation required the police. She went to a neighbor's home where there was a telephone and instructed him to call for help.

Officer Andre Cureton testified that when he responded to a radio call in the area, he and other officers encountered a man who directed them to drive down an alley. Cureton there observed the defendant hunched over the complainant making rocking motions "backwards and forwards." The complainant had her back to the defendant at this time and her dress was off her shoulder and over her head. The defendant attempted to pull up his pants and run from the scene, but was only able to move a short distance before being captured by other officers.

Cureton attended to the complainant, who appeared bruised and upset and was bleeding from her lower lip. She was taken for treatment to a nearby hospital. While there, she told Cureton that she was bruised all over her back, her arms and her face and that her eye had been cut in the attack. Later, she told police that the defendant had taken her wallet from her bra during the attack. Eventually, she was examined, her finger was bandaged and she was released.

After leaving the complainant, Officer Cureton and his partner returned to the scene to look for the complainant's wallet. At this point, it was approximately one to two hours after officers had originally left the scene. No other officers had yet searched the area. They found neither a wallet nor any sort of weapon at the scene, which was covered in all types of garbage, debris and rats. Cureton returned to the location later to look for the wallet or weapon, again with no success. No weapon or wallet was ever recovered either from the scene or from the defendant.

Following the close of the State's case, the defendant presented his defense. Detective Jack Stewart, who interviewed the complainant shortly after the attack, testified first. He indicated that the complainant told him that she met defendant not where she had testified but, rather, as she exited a store at 36th and State, and she did not tell Stewart that they had parted company before she was assaulted. In addition, she told Stewart that defendant brandished a "sharp object."

The defense next offered the testimony of Dr. Ralph Jackson. He testified that he was employed at the hospital where the complainant was taken on April 16, 1995. He did not specifically remember treating the complainant. Instead, he stated that he had read a report from the hospital's records that indicated he had done so. He testified that he routinely prepared reports with regard to everyone he treated at the hospital. After dictating such reports, he received them, read them and signed them. The reports were prepared shortly after a patient's physical examination. This was done to memorialize the details of the patient's examination.

Dr. Jackson reiterated that he did not remember treating the complainant but stated that the emergency department's chart would refresh his recollection. However, after reviewing the report which contained his signature, he said that he had "no immediate personal recall" of the event. He added, "I can only stand by my record at this point."

Thereafter, a side bar was held where the State argued that since the doctor did not remember the totality of the document report, he could not remember individual parts and so defense counsel could not ask questions regarding particular parts of the report. Defense counsel

responded that she did not see why this should be so, since the doctor had conceded to authoring the report and signing it. Defense counsel then suggested that she be allowed to read from the report and to ask leading questions such as "isn't that what your report indicates?" The trial court sustained the State's objection and ruled that Dr. Jackson could not testify. The defense then asked to be allowed to examine Dr. Jackson as a hostile witness given that he was being uncooperative, but the trial court refused. When defense counsel noted that the doctor appeared to become uncooperative only after talking to the assistant State's Attorney, the doctor was called outside the presence of the jury and asked what had caused his story to change. He stated:

"I was asked in the hallway, maybe 45 minutes ago, to remember an incident, an isolated incident that happened almost two years ago to date. I honestly looked at the medical record. I read that medical record. I would forever stand by that medical record, but I cannot honestly tell you I remember that specific patient on that specific day."

Later, while still outside the presence of the jury, and amidst the State's many objections, defense counsel asked Dr. Jackson, "Doctor, has your memory been refreshed as to whether or not [the complainant] had any evidence of bruising, hematoma, trauma or abrasions?" The Doctor responded, "From reading my medical record she did not have those findings." The answer was allowed to stand but the State objected again on grounds that the doctor's memory was not refreshed. The doctor then explained:

"I saw that record when I showed up at court today. I had no prior knowledge, no discussion with anybody regarding that record, no time to review that record. I mean, you're asking me to recall an event two years ago on a split, you know notice or a split decision."

The State objected again, arguing that Jackson still had no personal recollection. The court stated that Jackson's memory was "for all practical purposes, refreshed the way it stands" after reading his report. The State continued its objection, however, saying that it would not be able to cross-examine, since the only response it would receive is, "I stand by my report." At that point, the court specifically asked Jackson, "Doctor, your memory is not refreshed at all?" Jackson replied, "Your Honor, I really wish I could tell you more." The court continued, "All you're testifying from is what that record says?" Jackson again stated that he had only seen the record when he arrived in court that day and that he had no time to review it.

After hearing this, the court decided that the State was correct and that Jackson was only testifying from the report and not his independent recollection. Defense counsel then requested that the report

be admitted into evidence. The court denied the request. The court also rejected defense counsel's idea that the doctor be allowed extra time to refresh his recollection.

The defense then made an offer of proof that showed that the medical record included statements by the complainant that "the man jumped out and showed her a gun," that she was "struck in the face and mouth with assailant's fists" and that she was "knocked down and dragged on the dirt and rocks." The medical report also stated that the assailant "brandished a knife" and that she was assaulted with "vaginal, rectal and anal penetration." Jackson's findings, as per the medical record, included that there was "no evidence of facial trauma," "normal external genitalia" with "no evidence of trauma, hematoma, bruising or abrasion," and "no evidence of gross trauma" in the rectal area.

After the record was read, the court again asked Jackson if his recollection was refreshed. Jackson replied:

"[C]ertainly it refreshes my memory to the point that, yes, I treated that patient. That is obvious by my chart. Would I have been able to tell you that story outside of this courtroom? No sir."

The jury was then recalled into the courtroom, and Jackson took the stand again. He confirmed that he was working on the date in question, that he prepared a report in connection with his work that evening, that the report indicated that he examined the complainant, but that he had no independent recollection of that examination. The State had no cross-examination for Jackson, and he was dismissed. As a result, the defense never was able to get into evidence the fact that the complainant's physical injuries were relatively minor according to Dr. Jackson's observations or that she indicated to him that the assailant had a gun. Nonetheless, the defense rested its case. The State had no rebuttal. Both sides offered closing arguments and the jury was instructed and it began its deliberations.

As deliberations proceeded, the jury had several questions for the court. The first request was for the medical record and the police report of the incident. The court responded that the police reports and medical records were not in evidence and that the jury should continue to deliberate. The jury then asked if one could be found not guilty of aggravated criminal sexual assault by sex organ penetration and found guilty for criminal sexual assault by anal penetration. The court answered "yes" and instructed the jury to continue. The jury also asked if two consenting adults were having sex and then one said "no," whether that would be aggravated criminal sexual assault or criminal sexual assault. The court told the jurors they had been given the law that applied to the case and that they should continue to de-

liberate. Finally, the jury asked for a definition of the word "perpe-trate," which the court defined from Webster's dictionary as "com-mit."

As the deliberations continued, the jury requested to see the writ-ten testimony of Officer Cureton. The court answered that transcripts were not available. A bit later, the jury sent a note saying that it could not come to a decision. The court instructed it to continue deliberat-ing.

At about 8:15 p.m., after 6 hours and 25 minutes of deliberating, the court told the State to prepare a *Prim* instruction. See *People v. Prim*, 53 Ill. 2d 62, 289 N.E.2d 601 (1972). The defense objected, stat-ing that the jury had not yet indicated that it was hopelessly deadlocked and that its last note had come two hours ago. The defense requested that it continue deliberating and that it be sequestered.

The trial court decided to bring the jury out to talk to the foreman and determine the jury's progress, noting that the evidence had only taken three hours to present. The defense requested that each juror be individually polled. The jury was brought out, and the foreman indicated that he believed they could be hopelessly deadlocked. The court then polled the remaining jurors and found that, by a count of 8 to 4, the jurors did not believe themselves hopelessly deadlocked. The jury then returned to the jury room to continue deliberations.

Shortly afterwards, the jury returned to the courtroom, having sent a note to the court that it had reached a verdict on all but one count. The jury turned over its verdict forms on all but that one count, and the court again polled the jurors to determine if they were hope-lessly deadlocked. The jurors unanimously decided that they were so deadlocked. The court then gave them a *Prim* instruction and ordered them to return to their deliberations.

About an hour and one half later, both sides agreed to have the jury sequestered, rejecting the idea of either a hung jury or having the jury go home and start anew. Around the same time, the jury sent an-other note saying that it was still "deadlocked with no resolution."

Sometime later the jury returned to the courtroom with a guilty verdict on a single charge of criminal sexual assault by anal penetra-tion and not guilty on all other counts. The jurors were polled and their votes recorded.

Subsequently, the defendant filed a motion for a new trial. The motion was denied by the court. The State then asked that defendant be sentenced as a Class X offender because his crime had been "brutal and heinous." At sentencing, the trial court found that defendant's sentence should be enhanced because he was a Class X offender in that he conceded having been previously convicted within the past 10

years of aggravated criminal sexual assault. The court ordered the defendant to serve 30 years in the custody of the Illinois Department of Corrections.

■ On appeal, defendant concedes that medical records like Dr. Jackson's report are generally inadmissible. He argues, however, that the court should have recognized an exception to the rule of admissibility based upon "past-recollection recorded." To fall within the past-recollection-recorded exception, the evidence must meet four requirements: (1) the witness had firsthand knowledge of the recorded event; (2) the written statement was made at or near the time of the event and while the witness had a clear and accurate memory of it; (3) the witness lacks present recollection of the event; and (4) the witness can vouch for the accuracy of the written statement. *Salcik v. Tassone*, 236 Ill. App. 3d 548, 554, 603 N.E.2d 793 (1992).

The defendant's argument on this issue is quite similar to arguments that were made in *People v. Hamilton*, 283 Ill. App. 3d 854, 670 N.E.2d 1189 (1996), *rev'd on other grounds*, 179 Ill. 2d 319, 688 N.E.2d 1166 (1997), where the defendant attempted to assign as trial court error his failure to argue a theory of admission to the court. Invoking waiver, the court stated:

"Defendant's argument is well thought out albeit in the end unconvincing. We are able to resist his efforts to persuade, because defendant waived his argument by failing to make it in front of the trial court. As an appellate court, we have the luxury of time to research and ponder delicate questions of law. We have clerks to aid us. We also have the benefit of hindsight. Not so the trial courts. Often they are obliged to rely upon the authority cited by counsel in making their rulings, as in this case. We will not impute error to a trial court for failure to consider a theory not fairly presented. The trial court does not have a duty to consider all possible theories; rather, its task is to rule on the basis of the theories presented." *Hamilton*, 283 Ill. App. 3d at 861, citing *Salcik v. Tassone*, 236 Ill. App. 3d 548, 555, 603 N.E.2d 793 (1992).

The court immediately added:

"In the context of evidentiary rulings it is firmly established objections on specific grounds waive all other grounds. [Citations.] A proponent preserves for appellate consideration only those theories proposed at the time of trial." *Hamilton*, 283 Ill. App. 3d at 861-62, citing *Salcik*, 236 Ill. App. 3d at 555.

M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 103.7, at 25 (6th ed. 1994).

■ Here, the defendant's reliance on past-recollection recorded is waived. First, defendant never specifically asked the trial court to admit the medical record as a past-recollection recorded. Instead, he

attempted to use the report only to refresh Dr. Jackson's memory, which it did not do. When he did attempt to admit the report in evidence, he never suggested past-recollection recorded. Second, defendant never included the issue in his posttrial memorandum. Although he there stated that the trial court "erred in denying the admission of Dr. Ralph Jackson's medical report," he failed to elaborate why doing so was error. Our courts have consistently stated that an issue must be specifically stated in a posttrial motion in order to properly preserve the issue on appeal. *People v. Enoch*, 122 Ill. 2d 176, 186, 522 N.E.2d 1124 (1988); *Hamilton*, 283 Ill. App. 3d at 862.

Defendant next contends that, if the issue is waived, we should consider it to be plain error. The plain error exception permits consideration of errors affecting substantial rights that were not brought to the attention of the trial court. *People v. Mahaffey*, 166 Ill. 2d 1, 27, 651 N.E.2d 1055 (1995). The plain error rule is a limited exception to the waiver doctrine that will preserve an issue for appellate review where an appellate court finds that the error is of such magnitude that the defendant was denied a fair trial or where the evidence is closely balanced. *People v. Friesland*, 109 Ill. 2d 369, 488 N.E.2d 261 (1985).

In the present case, the plain error exception to the waiver doctrine is not applicable. This is so because any alleged error resulting from the failure to admit Dr. Jackson's medical report did not result in defendant being denied a fair trial. Moreover, despite the cautiousness of the jury in weighing the evidence, we do not find the evidence to be closely balanced on the single charge for which defendant was convicted; rather, the evidence overwhelmingly indicates defendant is guilty of criminal sexual assault.

Defendant alleges that his guilt was not proven because the State could not establish that his contact with the victim was not consensual in light of the many inconsistencies in her story. Yet this argument ignores the testimony of Officer Cureton in which he described the defendant as "bumping" the complainant in a backwards/forwards motion while her dress was pulled over her head and he pressed on her neck. Cureton testified that her body was bruised and her face swollen. She had lacerations, was crying and was distraught. Also, Ms. Means testified to hearing a conversation from outside her building in which a man threatened an obviously terrified woman. For defendant to claim that the complainant was engaging in consensual sexual relations in the face of such evidence defies common sense. In our view, nothing in Dr. Jackson's report would have made the evidence of sexual assault "closely balanced."

■ We turn to defendant's claim that the trial court erred in not

giving Dr. Jackson additional time to refresh his recollection regarding the circumstances of the complainant's examination. However, in light of Dr. Jackson's consistent testimony that he could not recall the examination, we see no error. The manner in which refreshing recollection takes place is within the sound discretion of the trial court. *People v. Lavas*, 113 Ill. App. 3d 196, 201, 446 N.E.2d 1188 (1983). Such an decision will not be disturbed on appeal absent an abuse of discretion. *Lavas*, 113 Ill. App. 3d at 196. We also find no abuse of discretion in the court's refusal to allow defendant to question Dr. Jackson as a hostile witness. The record simply does not support the conclusion that Dr. Jackson was hostile.

■ Defendant's claim that the evidence is insufficient to convict him borders on the disingenuous, as is evident by our prior discussion of why the plain error doctrine does not apply. The law is clear that the testimony of a single witness is sufficient to convict. *People v. Smith*, 278 Ill. App. 3d 343, 356, 662 N.E.2d 480 (1996).

Finally, defendant claims that the trial court improperly imposed an extended-term sentence of 30 years based upon an erroneous finding that his offense was "exceptionally brutal or heinous behavior indicative of wanton cruelty," as is required for the imposition of an extended sentence under the terms of section 5—5—3.2(b)(2) (730 ILCS 5—5—3.2(b)(2) (West 1996)) and section 5—8—2(a)(3) (730 ILCS 5—8—2(a)(3) (West 1996)) of the Unified Code of Corrections (Corrections Code). Defendant's crime, criminal sexual assault, is a Class 1 felony which generally carries a maximum term of 15 years. See 720 ILCS 5/12—13(b)(1) (West Supp. 1997) (defining sexual assault as a Class 1 felony); 730 ILCS 5/5—8—1a(4) (West 1996) (setting the mandatory length of imprisonment for a Class 1 offense as between 4 and 15 years). Although he concedes that a Class 1 offense may be extended to between 15 and 30 years under sections 5—5—3.2(b)(2) and 5—8—2(a)(3), he points out that he was acquitted of the charges of aggravated criminal sexual assault, a more serious Class X offense, which generally carries a mandatory sentence of between 6 and 30 years. See 720 ILCS 5/12—14(d)(1) (West Supp. 1997) (defining aggravated criminal sexual assault as a Class X felony); 730 ILCS 5/5—8—1(a)(3) (West 1996) (setting the mandatory length of imprisonment for Class X offenses as being 6 and 30 years). Since he was acquitted of a charge that carries a maximum term of 30 years, he argues it was obvious error to characterize criminal sexual assault, the lesser offense, as if it were as serious a crime as the higher grade offense.

■ The most fundamental problem with the defendant's argument is that it is simply not supported by the record before us. Although it is true that the State requested an extended sentence under Correc-

tions Code section 5—5—3.2(b)(2), and although the trial judge stated that he believed "rape" was always indicative of wanton cruelty, the judge also stated that he did not "think that this particular case falls under that particular statutory provision to have the Court impose an extended term based upon that." Rather, the record shows the court enhanced defendant's sentence under the terms of section 12—13 of the Criminal Code (720 ILCS 5/12—13(b) (West 1996)), based upon a prior conviction for aggravated criminal sexual assault which occurred in 1990. The State tendered a certified copy of the prior conviction, and defense counsel conceded that defendant had been so convicted.

On appeal, the State has abandoned any claim that defendant's crime was exceptionally brutal and heinous as those terms are used by section 5—5—3.2(b)(2) of the Corrections Code. It now relies exclusively upon the trial court's use of section 12—13 of the Criminal Code to justify defendant's sentence. In an unusual twist, however, the State argues that defendant's 30-year sentence is improperly *short* under the current terms of section 12—13 and urges that we set the sentence aside and impose in its place a natural life sentence. Section 12—13 was modified by the General Assembly to provide for natural life sentencing effective January 1, 1998. See Pub. Act 90—396 § 5, eff. January 1, 1998.

The relevant provisions of section 12—13, as it currently exists, are as follows:

"(b) Sentence.

(1) Criminal sexual assault is a Class 1 felony.

(2) A person who is convicted of the offense of criminal sexual assault *** after having previously been convicted of the offense of criminal sexual assault *** commits a Class X felony for which the person shall be sentenced to a term of imprisonment of not less than 30 years and not more than 60 years. ***

(3) A person who is convicted of the offense of criminal sexual assault *** after having previously been convicted of the offense of aggravated criminal sexual assault *** shall be sentenced to a term of natural life imprisonment. ***
***

(5) When a person has any such prior conviction, the information or indictment charging that person shall state such prior conviction so as to give notice of the State's intention to treat the charge as a Class X felony." 720 ILCS 5/12—13 (West Supp. 1997).

The State points out that defendant's prior conviction was for an *aggravated* criminal sexual assault, not criminal sexual assault, making natural life imprisonment the required sentence.

Since the State has raised its sentencing claims for the first time on appeal, we proceed with extra caution in considering the issue because we do not have the benefit of the trial court's consideration. Such a review of the issue points out significant defects in the State's argument. These flaws stem from the State's failure to recognize that the defendant has the right to elect to be sentenced under the former statute, which did not provide for a life sentence (*People v. Felella*, 131 Ill. 2d 525, 546 N.E.2d 492 (1989)), and from the fact that prosecutors who initially charged the defendant, for whatever reason, failed to give notice of their intention to charge him as a Class X offender. This latter requirement is found in both the current and former versions of section 12—13, as well as in section 111—3(c) of the Code of Criminal Procedure (725 ILCS 5/111—3(c) (West 1996)). The relevant provision of section 111—3 is as follows:

"When the State seeks an enhanced sentence because of a prior conviction, the charge shall also state the intention to seek an enhanced sentence and shall state such prior conviction so as to give notice to the defendant. *** For the purposes of this Section, 'enhanced sentence' means a sentence which is increased by a prior conviction from one classification of offense to another higher level classification of offense set forth in Section 5—5—1 of the 'Unified Code of Corrections,' *** it does not include an increase in the sentence applied within the same level of classification of offense." 725 ILCS 5/111—3(c) (West 1996).

The State, in its arguments, simply has ignored the fact that the former statute did not require that defendant receive a life sentence. Its reply brief does address, however, the notice issue by arguing that if we were to enhance defendant's sentence to a natural life sentence under section 12—13, "the court would not be elevating his offense to a Class X felony. *** Rather, the class of Defendant's present offense remains the same, and his sentence reflects only his status as a previous Class X offender." With this unsupported argument, we simply disagree.

The State's position is directly contrary to the plain and unambiguous language of section 12—13, as well as our supreme court's precedent on the issue. Clearly, subparts (b)(2) and (b)(3) of current section 12—13 elevate the *offense* (not just the sentence) of criminal sexual assault from being a Class 1 felony to being a Class X felony. This is why the current section states that an offender who has a previous triggering offense "commits a Class X felony." See 720 ILCS 5/12—13(b)(2) (West Supp. 1997). The State's reliance on *People v. Jameson*, 162 Ill. 2d 282, 642 N.E.2d 1207 (1994), is misplaced. In *Jameson*, it was the defendant's *sentence* that was enhanced, not his conviction.

*Cf. People v. Olivo*, 183 Ill. 2d 339, 701 N.E.2d 511 (1998) (drawing distinction between enhancement of sentence and enhancement of conviction); *People v. Thomas*, 171 Ill. 2d 207, 664 N.E.2d 76 (1996) (enhanced sentencing under section 5—5—3(c)(8) does not elevate the class of a crime). The supreme court found the distinction to be important in light of the definition given by the General Assembly to the words "enhanced sentence" in section 111—3 of the Code of Criminal Procedure. *Jameson*, 162 Ill. 2d at 290-92.

In this case, the State charged defendant with a Class 1 offense, although it later established that he actually committed a Class X offense due to the existence of his prior conviction. However, both sections 12—13 of the Criminal Code and 111—3 of the Code of Criminal Procedure require the State, if it intends to elevate the class of defendant's offense, to give him notice of this intention within the charging instrument. The State failed to do so. Therefore, defendant must be treated as having committed a Class 1 offense, rather than a Class X offense.

We note that the above discussion has not addressed whether the defendant is eligible to have his Class 1 sentence extended beyond the maximum 15 years generally given to Class 1 offenders pursuant to the terms of section 5—5—3.2(b)(1) (730 ILCS 5/5—5—3.2(b)(1) (West 1996)) and section 5—8—2(a)(3) (730 ILCS 5/5—8—2(a)(3) (West 1996)) of the Corrections Code. These sections permit the trial court to sentence a Class 1 offender to a term of imprisonment of between 15 and 30 years where the trial court finds it to be appropriate, and where there is shown to exist certain predicate facts relating to a prior conviction. By citing the supreme court's recent decision in *Olivo*, which discusses section 5—5—3.2(b), the State indicates that there may be some confusion regarding the appropriateness of invoking these provisions. We simply note that the parties have failed to discuss the possibility of an extended term under sections 5—5—3.2(b)(1) and 5—8—2(a)(3) during either the sentencing hearing below or in their briefs on appeal. We make no comment, therefore, as to the propriety or impropriety of handing down such a sentence in this case. We simply point out that our discussion of the above sentencing issues has not precluded the State from seeking such an extended sentence on remand.

For the foregoing reasons, the defendant's conviction of criminal sexual assault is affirmed. His sentence is vacated and the cause remanded for further proceedings consistent with this opinion.

Affirmed; sentence vacated and remanded.

CAMPBELL, P.J., and QUINN, J., concur.