2021 IL App (2d) 210104-U
No. 2-21-0104
Order filed December 17, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No.    19-CF-2483 |
| | ) | |
| VONZELL WHITEHEAD, | ) | Honorable |
| | ) | Mark K. Levitt, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HUDSON delivered the judgment of the court.
Justices Zenoff and Schostok concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Apartment stoop was a public place of accommodation for purpose of aggravated battery statute; the State did not misstate the law regarding what constitutes a public place of accommodation in its closing argument; and trial court's erroneous instruction to the jury did not amount to plain error.

¶ 2                                    I. INTRODUCTION

¶ 3   Following a jury trial in the circuit court of Lake County, defendant, Vonzell Williams, was convicted of two counts of aggravated battery and sentenced to 42 months' imprisonment. He now appeals, raising four main issues. First, he contends that he was not on or about a public place of accommodation when he committed an alleged battery, so his conviction on that count must be

reduced to simple battery. In a related argument, he asserts that, in its closing argument, the State misstated the law on this issue. Second, he argues that the trial court did not instruct the jury properly regarding verdict forms for greater and lesser included offenses. Third, he asserts, and the State agrees, that this case must be remanded for a *Krankel* hearing. See *People v. Krankel*, 102 Ill. 2d 181 (1984). Fourth, defendant contends, and the State again agrees, that one of his aggravated-battery convictions must be vacated on one-act, one-crime principles. See *People v. King*, 66 Ill. 2d 551 (1977). For the following reasons, we affirm in part, vacate in part, and remand.

¶ 4                                    II. BACKGROUND

¶ 5      Defendant was charged with six counts of aggravated battery. Three of them charged he caused bodily harm to Steven Box, the victim, and, respectively, he knew the victim was disabled, he used a deadly weapon, or it was committed on or about a public way. The remaining three counts charged that defendant made contact of an insulting or provoking nature with the victim, along with the three respective attendant circumstances. Three witnesses testified at defendant's trial.

¶ 6      The State's first witness was Box. Box testified that he became disabled in 2007 in a motorcycle accident and that he had open heart surgery shortly thereafter. In 2015, a mass was found on his right kidney, leading to its removal. Box developed cancer eight months later. Subsequently, half of his left kidney was removed. He limps when he walks without a cane.

¶ 7      Box identified photographs of his apartment complex. Public sidewalks lead from the parking lot to the stoops of the various apartments.

¶ 8      On November 5, 2019, at about 7:30 p.m., Box was watching television. He heard "a lot of arguing, a lot of loud banging, a lot of noise," and people "screaming at each other." It was coming from the apartment next door. Box testified that "Mrs. Parks and her family" live there.

He mostly heard a male voice, but he also heard "several women yelling with the gentleman." He added, "They were pleading with him to leave the apartment." Box stated that he was "very good friends with the Parks family." He was concerned as to what was happening, so he opened his door. Box leaned on the door frame. He heard Mrs. Parks's voice. As Box was standing in his doorway, defendant "popped out onto the stoop." Box did not say anything. Defendant looked at him, said "something very derogatory[,] and socked [Box] in the left side of [his] face." Defendant said, " 'What are you looking at.' " He then struck Box.

¶ 9    After being struck, Box "went down" but got back up. Box feared that defendant would enter his apartment. He attempted to push the door closed. Defendant had "both feet in [his] door." Box attempted to swing his cane at defendant. Defendant caught it and struck Box's left wrist with the cane. Box fell again. Defendant struck Box again. Box managed to shut and lock the door. Defendant struck the door, causing a dent. Box called 9-1-1. Defendant remained outside, yelling at Box through the door. The police and EMTs arrived. Box made an in-court identification of defendant.

¶ 10    Box testified that when defendant punched him, Box was standing in his doorway. Box's and Parks's doors share a common stoop. There are neither security guards at nor fences around the apartment complex. Anyone "off the street can just walk onto [the] sidewalks up to [Box's] apartment."

¶ 11    On cross-examination, Box testified that he rented his apartment. The complex is owned by a company called Bottom Line Innovators. The incident took place on the stoop of Box's apartment. Box never left his apartment. Box was not in a cast or brace during the incident, and he was not using a walker. On redirect-examination, Box stated that his cane was near the door and that defendant took it from him.

¶ 12    The State's next witness was Edna Parks. She resides in her apartment with her daughter and three grandchildren aged 16, 14, and 7. Defendant is her son. Defendant did not live with her. At about 7:30 p.m. on November 5, 2019 (a Tuesday), defendant came over. He knocked on the door, and Parks's granddaughter opened it. Parks was in her room. She came out when she heard defendant. Defendant was yelling and sounded upset. Parks told her grandchildren to go to a different room. Defendant said his arm hurt. Parks was yelling at defendant, trying to find out what was wrong. Parks noted that defendant smelled like "[h]e had been drinking." Parks told defendant he had to leave. As he was leaving, defendant hit the apartment's interior wall. This was the wall between her apartment and Box's apartment. After defendant left, Parks closed her door.

¶ 13    She then heard defendant asking Box why he was standing in the door. She opened her door and saw defendant standing on the sidewalk. Box was standing in his door. Defendant was addressing Box using vulgarities. Box never left his apartment. Defendant made a fist and asked why Box was standing in the door. Parks could not actually see Box from where she was standing. Defendant advanced to the stoop in front of Box's apartment. Defendant made a movement with his hand, but Parks could not actually see whether defendant struck Box. She saw Box hit defendant with his cane twice (she clarified that she could only see the cane); then, defendant grabbed the cane away from Box and hit him. The police were called, and when they arrived, defendant was still holding the cane. Parks never heard Box say anything to defendant.

¶ 14    The paramedics arrived and examined Box. They were outside on the stoop. Box declined to go to the hospital. Parks was present and heard Box tell them that defendant had hit him in the jaw. In her written statement, when she wrote that defendant had hit Box, she based it on hearing Box say this. Parks testified that Box was standing in his door when defendant hit him. She never saw defendant strike Box's door with the cane.

¶ 15　On cross-examination, Parks stated that after the incident with Box, defendant asked for someone in her home to call the police. Parks asked a police officer to go speak with the property manager because she was concerned that she might be evicted. The officer did so, returned, and stated, "You're going to be a witness, don't worry."

¶ 16　The State then called Officer Robert Ogden of the Zion Police Department. On November 5, 2019, at about 7:59 p.m., he was dispatched to a disturbance occurring at an apartment complex in Zion. The complex is unfenced, and anyone can walk on its sidewalks. As Ogden approached the complex, he saw defendant coming toward him. Defendant was carrying what appeared to be a "black metal object, like a pole or something." Defendant was trying to get Ogden's attention. Ogden directed defendant to put the object down, and defendant complied. Defendant "seemed a little agitated, and he was speaking quickly." Defendant approached within "a couple feet." Ogden noted a "strong odor of alcohol." Ogden asked defendant where Box had kicked him; defendant could not "provide an answer." Defendant declined when asked if he needed an ambulance.

¶ 17　Ogden then spoke with Box. Box was calm and collected. Ogden took photographs of Box's face and wrist, as well as his door.

¶ 18　Ogden spoke with defendant a second time at the police department. Ogden photographed defendant's arm. After this interview, defendant requested an ambulance as he was being escorted to a cell. Defendant stated that the injury was caused by Box hitting him in the arm with the cane. Defendant did not cross-examination Ogden.

¶ 19　The State then rested. Defendant moved for a directed finding on all six counts. The trial court granted the motion with respect to the two counts based on defendant committing harmful or insulting/provoking contact knowing the victim to be disabled. It denied the motion regarding the remaining four counts. The defense then rested as well. Defendant subsequently requested that

the jury be instructed on the lesser-included offense of misdemeanor battery, and the trial court agreed to give that instruction.

¶ 20    The jury found defendant guilty of both counts of aggravated battery (causing harm and making contact of an insulting or provoking nature) based on the offense occurring on or about a public place of accommodation. It also found defendant guilty of simple battery. Finally, it acquitted defendant of the two counts of aggravated battery based on using a deadly weapon. On April 22, 2020, defendant filed a motion, *pro se*, asserting ineffective assistance of counsel and requesting a *Krankel* hearing. The trial court never addressed this motion. Defendant was sentenced to concurrent counts of 42-months' imprisonment on the two aggravated battery counts. This appeal followed.

¶ 21                                III. ANALYSIS

¶ 22    On appeal, defendant raises the following issues. He first argues that where he committed the battery was not "on or about a public place of accommodation" and, in a related argument, he asserts that the State misstated the law on this issue. Next, he contends that the trial court failed to instruct the jury properly regarding the verdict forms for greater and lesser included offenses. Third, defendant argues that we must remand this case for a *Krankel* hearing. See *People v. Krankel*, 102 Ill. 2d 181 (1984). Fourth, defendant asserts that one of his aggravated-battery convictions should be vacated on one-act, one-crime principles. See *People v. King*, 66 Ill. 2d 551 (1977).

¶ 23    The State concedes the latter two arguments. Accordingly, we remand this case to allow the trial court to conduct a *Krankel* hearing. Additionally, we vacate defendant's conviction for aggravated battery entered pursuant to Count 6. This count is based on defendant making contact with the victim of an insulting or provoking nature. 720 ILCS 5/12-3(c) (West 2018). As a less

serious offense than the aggravated battery count premised on defendant causing harm, this is the proper count to vacate. *People v. Young*, 362 Ill. App. 3d 843, 853 (2005). We now turn to the issues that remain in dispute.

¶ 24                          A. PUBLIC PLACE OF ACCOMMODATION

¶ 25    Defendant raises two subarguments here. First, he argues that he was not on or about a public place of accommodation when he committed the battery, so his conviction must be reduced from aggravated battery to simple battery. Second, he contends that the State misstated the law regarding what constitutes a public place of accommodation during its closing argument.

¶ 26                          1. The Aggravated-Battery Conviction

¶ 27    Defendant first argues that the place where he was convicted of committing a battery was not a public place of accommodation. Thus, he continues, his conviction for aggravated battery must be reduced to simple battery.

¶ 28    Generally speaking, to prove aggravated battery, the State must first prove simple battery. *People v. Ojeda*, 397 Ill. App. 3d 285, 286 (2009). Aggravated battery occurs, *inter alia*, when a person commits a simple battery and, pertinent here, "he or she is or the person battered is on or about a public way, public property, a public place of accommodation or amusement, a sports venue, or a domestic violence shelter, or in a church, synagogue, mosque, or other building, structure, or place used for religious worship." 720 ILCS 5/12-3.05(c) (West 2018)). Here, the meaning of the term "public place of accommodation" is at issue. We are thus presented with a question of statutory interpretation. See *People v. Ward*, 215 Ill. 2d 317, 324 (2005). The interpretation of a statute presents a question of law subject to *de novo* review. *Id*.

¶ 29    Our main objective in construing a statute is to ascertain and give effect to the intent of the legislature. *People v. Garcia*, 241 Ill. 2d 416, 421 (2011). The plain language of the statute is

typically the best indicator of that intent. *People v. Collins*, 214 Ill. 2d 206, 214 (2005). Moreover, a court " 'may properly consider not only the language of the statute, but also the purpose and necessity for the law, and evils sought to be remedied, and goals to be achieved.' " *Id.* (quoting *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 280 (2003)). "It is always presumed that the legislature did not intend to cause absurd, inconvenient, or unjust results." *Garcia*, 241 Ill. 2d at 421 (quoting *People v. Lewis*, 234 Ill. 2d 32, 44 (2009)). Where a statute is ambiguous, a court may employ extrinsic aids of construction as well. *Collins*, 214 Ill. 2d at 214.

¶ 30    Considerable case law exists regarding the meaning of the phrase "public place of accommodation." In *People v. Ward*, 95 Ill. App. 3d 283, 288 (1981), this court addressing an earlier version of the statute now before us, explained, "Whether the property was actually publicly owned and, therefore, 'public property' rather than a privately owned 'public place of accommodation' is irrelevant; what is significant is that the alleged offense occurred in an area accessible to the public." In *People v. Murphy*, 145 Ill. App. 3d 813, 815 (1986), the court, finding a privately-owned tavern to be a place of public amusement, observed, "the terms 'place of public accommodation or amusement' seem to apply generically to places where the public is invited to come into and partake of whatever is being offered therein." Moreover, the Fifth District of this appellate court recently held, "The required question for an aggravated battery under section 3.05(c) 'is whether the area where the offense occurred is accessible to the public.' " *People v. Crawford*, 2021 IL App (5th) 170496, ¶ 60 (quoting *Blackburn v. Johnson*, 187 Ill. App. 3d 557, 564 (1989)).

¶ 31    We have little difficulty determining that defendant was on or about a place accessible to the public when he committed the battery against Box. The testimony clearly established that he was on the stoop of Box's apartment. Box testified that he was standing in his doorway when

defendant struck him. Parks testified that defendant advanced to the stoop in front of Box's apartment and made a movement with his hand, though she could not actually see if defendant struck Box. This evidence was uncontroverted. Moreover, Box testified that anyone "off the street can just walk onto [the] sidewalks up to [Box's] apartment." Thus, the evidence established that defendant was on the stoop and the stoop was open to the public. Defendant cites *In re Jerome S.*, 2012 IL App (4th) 100862, ¶ 13, for the proposition that the "threshold" of Box's apartment "is simply not a place 'shared by all members of the community.' " A" threshold" is "the plank, stone, or piece of timber or metal that lies under a door." Webster's Third New International Dictionary 2383 (2002). Conversely, the evidence indicated that defendant was on the stoop and not in the threshold. Further, *Jerome S.*, 2012 IL App (4th) 100862, ¶ 13, addressed whether a school bus constituted public transportation, so it does not provide particularly useful guidance here.

¶ 32    Defendant points out that the stoop constituted curtilage as defined by fourth amendment case law. *Cf. People v. Bonilla*, 2018 IL 122484, ¶ 25 ("The common-area hallway immediately outside of defendant's apartment door is curtilage."). We have no quarrel with this proposition; however, it has no bearing on this case. Defendant cites no case where the fact that an area was curtilage has been given any weight in ascertaining whether it was a "public place of accommodation." Moreover, the precedent we have located points to a different result.

¶ 33    It is important to note that Box's stoop, in addition to being curtilage, is also the point of ingress into the home. In *People v. Burns*, 2016 IL 118973, ¶ 92 (Garman, J., specially concurring), Justice Garmin noted that in a plain-view analysis "curtilage may also act as a buffer to shield the core fourth amendment area within the home, and [plain-view] cases typically focus on where law enforcement officers stand in making their observations." *Id.* That is, "where an officer uses his own natural senses from a permitted vantage point on public property to discover what is occurring

inside a private residence, it is not a search in violation of the fourth amendment." Where an officer makes an observation within the curtilage of a dwelling, the case often turns on an "inquiry into the license afforded the general public to approach." *Id*. She cited *Florida v. Jardines*, 569 U.S. 1, 8 (2013), for the following:

> " 'A license may be implied from the habits of the country,' notwithstanding the 'strict rule of the English common law as to entry upon a close.' *McKee v. Gratz,* 260 U.S. 127, 136 (1922) (Holmes, J.). We have accordingly recognized that 'the knocker on the front door is treated as an invitation or license to attempt an entry, justifying ingress to the home by solicitors, hawkers and peddlers of all kinds.' *Breard v. Alexandria,* 341 U.S. 622, 626 (1951). This implicit license typically permits the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave. Complying with the terms of that traditional invitation does not require fine-grained legal knowledge; it is generally managed without incident by the Nation's Girl Scouts and trick-or-treaters."

Hence, regardless of whether Box's stoop was curtilage, society recognizes an implicit license allowing the general public to approach Box's door. Here, defendant's approach was unobstructed and unrestricted in any way. In other words, "the area where the offense occurred is accessible to the public.' " *Crawford*, 2021 IL App (5th) 170496, ¶ 60.

¶ 34    Indeed, numerous Illinois cases have recognized that the dweller of a home has a diminished expectation of privacy in areas such as stoops and porches. In *People v. Jones*, 119 Ill. App. 3d 615, 619 (1983), the police arrested the defendant on the front porch of his house. They had no warrant. They approached a closed screen door with an open interior door and knocked. The defendant came to the door and, recognizing the officers, stepped onto the porch. The

defendant argued that since the arrest occurred in the curtilage of his home, it constituted a warrantless arrest within the privacy interest protected by the home and thus violated the fourth amendment. The reviewing court held that no constitutional violation occurred, explaining, "At the time Jones stepped outside, the police had no more unreasonably intruded upon his privacy than does a boy collecting for the newspaper or a little girl selling girl scout cookies." *Id.* at 622 (citing *State v. Corbett*, 15 Or. App. 470, 516 (1973)). Similarly, in *People v. Arias*, 179 Ill. App. 3d 890, 895 (1989), the court found no invasion of a constitutionally protected interest where the police entered an enclosed porch and knocked on the door leading to the main house. If there is no reasonable expectation of privacy in an enclosed porch, surely the same is true of an open stoop. See also *United States v. Santana*, 427 U.S. 38, 42 (1976) (finding the threshold of a house to be a public place for purposes of the fourth amendment). Moreover, we also note that the stoop in this case was shared by two households. Thus, defendant's reliance on the status of the victim's stoop as potential curtilage is misplaced.

¶ 35    However, defendant further asserts that construing "public place of accommodation" to apply in the instant case would not serve the purpose intended by the legislature. Defendant points to *People v. Clark*, 70 Ill. App. 3d 698, 700 (1979), where the court explained, "[T]he intent of the legislature in defining the presence upon a public way as an aggravated circumstance was to protect an innocent member of the public who might also be situated upon the public way and thus be endangered by a battery committed in close proximity to his person." As explained above, members of the public could approach Box's door and stand on his stoop. As such, a battery committed there could affect members of the public. Parenthetically, we decline to draw a distinction based on the likelihood that there would be a relatively fewer number of people on Box's stoop than one might find on a busy avenue or in a shopping mall.

¶ 36    In short, we reject defendant's argument on this point.

¶ 37                                    2. Closing Argument

¶ 38    Next, defendant asserts that the State repeatedly misstated the law concerning what constitutes a public place of accommodation during its closing argument. A defendant is, of course, "entitled to a fair, orderly, and impartial trial." *People v. Wheeler*, 226 Ill. 2d 92, 122 (2007). A prosecutor "has an ethical duty to the People of the State of Illinois, including all defendants prosecuted by him, to insure that a fair trial is accorded to the accused." *People v. Valdery*, 65 Ill. App. 3d 375, 378 (1978). To this end, a prosecutor must not misstate the law during closing argument. *People v. Moody*, 2016 IL App (1st) 130071, ¶ 68. Nevertheless, it is well established that "[p]rosecutors are granted wide latitude in delivering closing arguments." *People v. Bona*, 2018 IL App (2d) 160581, ¶ 57. "Whether statements made by a prosecutor at closing argument were so egregious that they warrant a new trial is a legal issue this court reviews *de novo*." *Wheeler*, 226 Ill. 2d at 121.

¶ 39    As a preliminary matter, defendant concedes that this issue is not properly preserved, so it may only be reviewed for plain error. See *People v. Piatkowski*, 224 Ill. 2d 551, 565 (2007). However, before we can determine if error is plain, we must first determine whether error occurred in the first place. *People v. Young*, 2013 IL App (2d) 120167, ¶ 21.

¶ 40    Defendant complains of two comments. First, he complains that the State defined "public place of accommodation" as follows:

> "And when we say public place of accommodation, that is going back to places that are open to the public, places that you don't need to hop over a fence, that no guard is telling you that you can't go by there."

Defendant points out that courts have held places that are unfenced are not "public places of accommodation." See *People v. Jackson*, 87 Ill. App. 3d 306, 308 (1980) (holding a tavern's restroom was not a public place of accommodation."). Strictly speaking, defendant is correct; areas other than those that are fenced or guarded have been found to be outside the scope of "public places of accommodation." We do note that in this passage, the State also states that public places of accommodation are "places that are open to the public."

¶ 41    The State counters that defendant is taking the passage quoted in the previous paragraph out of context. Of course, "comments of counsel must be evaluated in the context in which they were made." *People v. Burgess*, 176 Ill. 2d 289, 319 (1997). In context, the State asserts, the comments defendant identifies are not problematic:

"And when we say public place of accommodation, that is going back to places that are open to the public, places that you don't need to hop over a fence, that no guard is telling you that you can't go by there. It's a way that our legislature wanted to stop people from committing batteries in the open public where people are going through walking through doing their days. [*Sic.*] The legislature decided that that is a reason to make what is just a normal battery to an aggravated battery. I submit to you that the testimony that you have heard has shown that these sidewalks next to the street are open and accessible to the public. It's accommodating in the sense you can walk wherever they want to in that complex. No one stops them. It's not some sheltered foyer in an apartment complex. This is an open air walkway, open place of accommodation, and for that, this would make it an aggravated battery."

Read in its entirety, it is clear that the prosecutor is speaking of a place that is open to the public. Throughout, the State uses the terms "open to the public" twice, "open and accessible to the public"

once, and "open place of accommodation" once. It was not asking the jury to find that Box's stoop was a "public place of accommodation" based simply on the absence of a fence or a guard. We find this argument unpersuasive.

¶ 42    Defendant also points to a second passage: "No instruction is going to tell you that the sidewalk abutting the apartment there can't be a public place of accommodation. You're not going to hear that instruction because that's not the law." It is difficult to apprehend how this is even colorably erroneous. As the State points out, this is literally true. Defendant endeavors to characterize this as an attempt by the State to remove this issue from the jury's consideration: "[I]nstead of leaving this question for the jury to decide based off of the guidance given by the pattern instructions, the State again attempted to restate the applicable law in its own words." However, the State did not say that an instruction compelled a certain conclusion (*i.e.*, that the stoop necessarily was a public place of accommodation). Rather, the State simply (and correctly) stated that no instruction existed that would preclude the jury from determining that the stoop was a public place of accommodation. This does not contradict the law and does not invade the province of the jury's role as fact finder. We find this argument unpersuasive as well.

¶ 43    Having found no error here, we have no occasion to consider whether plain error occurred.

¶ 44                                B. JURY INSTRUCTIONS

¶ 45    Defendant further contends that the trial court failed to instruct the jury properly regarding how to use the verdict forms in light of the fact that the jury was considering a lesser included offense. The State agrees but counters that this omission did not rise to the level of plain error. We agree with the State.

¶ 46    During the instruction conference, defense counsel requested that the jury be instructed on the lesser included offense of simple battery. The trial court agreed. Accordingly, the jury should

have been instructed with IPI Criminal 4th No. 2.01Q and IPI Criminal 4th No. 26.01Q. The former provides:

"The defendant[s] [(is) (are)] [also] charged with the offense of [greater offense]. The defendant[s] [(has) (have)] pleaded not guilty. Under the law, a person charged with [greater offense] may be found (1) not guilty [of [greater offense] and not guilty of [lesser offense]]; or (2) guilty of [greater offense]; or (3) guilty of [lesser offense]."

The latter states:

"When you retire to the jury room you first will elect one of your members as your foreperson. He or she will preside during your deliberations on your verdict.

Your agreement on a verdict must be unanimous. Your verdict must be in writing and signed by all of you, including your foreperson.

[1] The defendant[s] [(is) (are)] [also] charged with the offense of _____. Under the law, a person charged with [greater offense] may be found (1) not guilty [of [greater offense] and not guilty of [lesser offense]; or (2) guilty of [greater offense]; or (3) guilty of [lesser offense].

[2] Accordingly, you will be provided with three verdict forms [as to each defendant] pertaining to the charge of [greater offense] 'not guilty [of [greater offense] and not guilty of [lesser offense]'; 'guilty of [greater offense],' and "guilty of [lesser offense].'

[3] From these three verdict forms, you should select the one verdict form that reflects your verdict [as to each defendant] and sign it as I have stated. Do not write on the other two verdict forms [as to that defendant). Sign only one of these verdict forms [as to each defendant].

[4] (If you find the State has proved the defendant guilty of both [greater offense] and [lesser offense], you should select the verdict form finding the defendant guilty of [greater offense] sign it as I have stated. Under these circumstances, do not sign the verdict form finding the defendant guilty of [lesser offense].]

[5] [(Under the law, the defendant cannot be guilty of [greater offense] and [lesser offense]. Accordingly, if you find the defendant guilty of [greater offense], that verdict would mean that the defendant is not guilty of [lesser offense]. Likewise, if you find the defendant guilty of [lesser offense], that verdict would mean that the defendant is not guilty of [greater offense].]"

The pertinent point here is that the jury should return only one form either finding defendant not guilty, finding him guilty of the greater offense, or finding him guilty of the lesser offense.

¶ 47    Instead of the two instructions set forth above, the trial court gave the following two instructions. First, it gave IPI Criminal 4th No. 2.01, which, as given by the trial court, states:

"The defendant is charged with the offenses of Aggravated Battery and Battery. The defendant has pleaded not guilty."

It also gave IPI Criminal 4th No. 26.01, which states:

"When you retire to the jury room you first will elect one of your members as your foreperson. He or she will preside during your deliberations on your verdicts.

Your agreement on a verdict must be unanimous. Your verdicts must be in writing and signed by all of you, including your foreperson.

The defendant is charged in different ways with the offenses of Aggravated Battery and Battery. You will receive two forms of verdict pertaining to each particular way that the offenses of Aggravated Battery and Battery are charged. As to each particular way the

offenses of Aggravated Battery and Battery are charged, you will be provided with both a 'not guilty' and 'guilty' form of verdict. From these two verdict forms as to each particular way that the offenses of Aggravated Battery and Battery are charged, you should select the one verdict form that reflects your verdict and sign it as I have stated. Do not write on the other verdict form. Sign only one verdict form as to each particular way that the offenses of Aggravated Battery and Battery are charged."

Here, the jury found defendant guilty of both the greater and lesser offenses, apparently selecting one verdict form for each charge regardless of whether it was a lesser-included offense.

¶ 48    As noted, the State and defendant agree that this was error. They also agree that the issue was not properly preserved for review. Defendant asks that we conduct plain-error review. The plain-error doctrine provides an exception to normal forfeiture principles. *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005). Where an error is not properly preserved, it may be considered by a court of review in two circumstances: (1) where the evidence is closely balanced, regardless of the magnitude of the error and (2) where the error is serious, regardless of whether the evidence is close. *Id.* at 187. A defendant bears the burden of persuasion in establishing plain error. *People v. Thurow*, 203 Ill. 2d 352, 363 (2003). Defendant contends that both exceptions apply in this case.

¶ 49    Before proceeding further, we are cognizant of the important role jury instruction serve in the delivery of justice. It has been stated, "Instructions convey the legal rules applicable to the evidence presented at trial and thus guide the jury's deliberations toward a proper verdict." *People v. Mohr*, 228 Ill. 2d 53, 65 (2008); see also *People v. Grant*, 2016 IL App (5th) 130416, ¶ 29. Nevertheless, this case involves plain error, so it remains defendant's burden to show that an error in the jury instructions prejudiced him. *Thurow*, 203 Ill. 2d at 363.

¶ 50     As a preliminary matter, we find the evidence in this case is not closely balanced. Defendant points out that he claimed that he had acted in self-defense. He notes that Parks was unable to see Box during the crime and could not tell whether defendant actually struck him. Defendant completely ignores Box's testimony, which is corroborated by photographs of Box's injuries. Indeed, Box's testimony is essentially uncontradicted. See *People v. Ayoubi*, 2020 IL App (1st) 180518, ¶ 60 (finding no plain error where the victim's "uncontradicted testimony showed that defendant not only moved her with the intent to confine her but actually did confine her."). Thus, we find unpersuasive defendant's claim that the evidence is closely balanced.

¶ 51     Turning to the second prong of the plain-error analysis, we find that inapplicable here as well. To succeed on this prong, a "defendant must prove there was plain error and that the error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." *Herron*, 215 Ill. 2d at 187 (citing *People v. Keene*, 169 Ill. 2d 1, 17 (1995)). Defendant has not met this high standard.

¶ 52     Defendant asserts that the failure by the trial court to give proper instructions "misled and confused the jury." As a result, according to defendant, the jury "returned inconsistent verdicts, returning both a 'guilty' form for the greater offense and a 'guilty' form for the lesser offense." Defendant does not explain how these verdicts were truly inconsistent.

¶ 53     After all, in the present case, the offenses at issue are simple battery and aggravated battery. There are no inconsistent elements in these two crimes. To prove aggravated battery, the State must first prove simple battery. *Ojeda*, 397 Ill. App. 3d at 286. Indeed, the statute defining aggravated battery states that "A person commits aggravated battery when, in committing a battery, other than by the discharge of a firearm, he or she knowingly does any of the following." 720 ILCS 5/12-3.05 (West 2018). It then goes on to enumerate a number of aggravating

circumstances that the State must prove to enhance simple battery to aggravated battery, including the aggravating circumstance at issue here. *Id*. It is difficult to see how the jury's verdicts in this case were inconsistent, as it had to first find that a battery occurred before considering whether an aggravating circumstance elevated the offense to the level of an aggravated battery.

¶ 54　　Indeed, this is not a situation where the lesser offense includes an element that is different than an element of the greater offense. This may occur in certain circumstances, for example, where the lesser offense is based on having a less culpable mental state. *People v. Willett*, 2015 IL App (4th) 130702, ¶ 59. Section 2-9 of the Criminal Code of 2012 defines "included offense" as an offense that "[i]s established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged." 720 ILCS 5/2-9 (West 2018). In such circumstances, it would be possible for a jury to render an inconsistent verdict if it found that a defendant acted with two mutually exclusive mental states. In the instant case, there is no comparable element.

¶ 55　　It is true that the jury should have only returned a verdict on the greater offense here. However, as explained above, that the jury also signed the "guilty" verdict form for the lesser included offense does not indicate a misunderstanding of the elements. Under the present circumstances, it at most shows the jury misunderstood the formal steps it should have taken to render its verdict.

¶ 56　　Defendant relies on *People v. Carter*, 389 Ill. App. 3d 175 (2009), in support of this argument. *Carter* involved an error similar to the one at issue here in that the jury in that case was instructed as if there were no lesser-included offenses when there actually were. It differs, however, in that the jury in that case should have been instructed using IPI Criminal 4th No. 26.01R, which is used when a defendant is charged with offenses other than the greater and lesser-

included offenses. In this case, defendant was only charged with the lesser-included and greater offenses, which calls for the use of IPI Criminal 4th No. 26.01Q. In *Carter*, the defendant was charged with the following six counts: "(1) possession with intent to deliver more than 100 grams, but less than 400 grams of a substance containing cocaine; (2) two counts of possession with intent to deliver more than 15 grams, but less than 100 grams of a substance containing cocaine; (3) possession of more than 100 grams, but less than 400 grams of a substance containing cocaine; (4) possession with intent to deliver more than 500 grams, but less than 2,000 grams of a substance containing cannabis; and (5) possession of more than 500 grams, but less than 2,000 grams of a substance containing cannabis." *Id.* at 177. Some involved cannabis, some cocaine. Some were lesser-included offenses of certain other greater offenses but not of other offenses.

¶ 57    During deliberations, the jury inquired of the trial court, "Can [the defendant] be guilty for under 100 grams and over 100 grams using the same evidence?" *Id.* at 179. "Following deliberations, the jury found defendant guilty of possession with intent to deliver more than 100 grams, but less than 400 grams of a substance containing cocaine and possession of cannabis with intent to deliver more than 500 grams, but less than 2,000 grams as well as the offenses of simple possession for each charge. However, the jury found defendant not guilty of the lesser included offense of possession with intent to deliver more than 15 grams, but less than 100 grams of a substance containing cocaine." *Id.* On its face, there is no direct contradiction between finding the defendant guilty of possession with intent to deliver 100 grams to 400 grams of cocaine while acquitting him of possessing with intent to deliver 15 grams to 100 grams of the same substance.

¶ 58    However, the jury's inquiry indicating that it was considering convicting the defendant of both counts based on the same evidence belies its confusion. *Id.* Moreover, the *Carter* court expressly noted the following:

-20-

"Instead, the jury received a misleading instruction that it would 'receive 12 verdict forms' and it 'should select the one verdict form that reflects [its] verdict.' The given instruction was especially confusing because defendant was charged with two different types of offenses—one involving cocaine and one involving cannabis."

We perceive no similar potential for confusion here. The six counts in this case were clearly delineated. Moreover, the same evidence would have supported a conviction for simple battery, and, along with the aggravating circumstance, the relevant count of aggravated battery. This was not a situation where the jury would have been considering an inconsistent verdict like the *Carter* jury that was apparently contemplating convicting the defendant in that case with simultaneously possessing more and less than 100 grams of cocaine. *Carter* is therefore distinguishable.

¶ 59    In sum, the jury in this case entered verdicts that contained no inconsistent elements. To obtain relief as plain error, a defendant must show the error was prejudicial. *Thurow*, 203 Ill. 2d at 363. Defendant has not carried his burden of establishing that the error in instructing the jury "create[d] a serious risk that the jurors incorrectly convicted the defendant because they did not understand the applicable law, so as to severely threaten the fairness of the trial." *People v. Hopp*, 209 Ill. 2d 1, 8 (2004).

¶ 60                                IV. CONCLUSION

¶ 61    In light of the foregoing, we vacate defendant's conviction for aggravated battery entered pursuant to Count 6. We otherwise affirm and remand this case for a *Krankel* hearing.

¶ 62    Vacated in part and affirmed in part; cause remanded.