**2023 IL 128051**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 128051)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
VONZELL WHITEHEAD, Appellant.

*Opinion filed March 23, 2023.*

JUSTICE NEVILLE delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Overstreet and Holder White concurred in the judgment and opinion.

Justices Cunningham, Rochford, and O'Brien took no part in the decision.

**OPINION**

¶ 1 After a jury trial, the defendant, Vonzell Whitehead, was found guilty of two counts of aggravated battery in a place of public accommodation and sentenced to 42 months' imprisonment with a 1-year term of mandatory supervised release. On appeal, Whitehead argued, *inter alia*, that his conviction for aggravated battery

should be reduced to simple battery because the offense was not committed "on or about a public place of accommodation." The appellate court rejected Whitehead's assertions and affirmed his conviction, finding that the stoop upon which the victim was battered was a public place of accommodation pursuant to section 12-3.05(c) of the Criminal Code of 2012 (Code) (720 ILCS 5/12-3.05(c) (West 2018)). 2021 IL App (2d) 210104-U, ¶¶ 28-31, 33, 36.

¶ 2     We allowed Whitehead's petition for leave to appeal pursuant to Illinois Supreme Court Rule 315 (eff. Oct. 1, 2021). For the following reasons, we now reverse the judgment of the appellate court, vacate Whitehead's conviction for aggravated battery, and enter a conviction for simple battery.

¶ 3                          I. BACKGROUND

¶ 4                    A. Circuit Court Proceedings

¶ 5     Whitehead was charged with two counts of aggravated battery pursuant to section 12-3.05(c) of the Code (720 ILCS 5/12-3.05(c) (West 2018)) for striking Steven Box with his fist and with a cane on the stoop in front of Box's residential doorway.

¶ 6     During Whitehead's trial, Box testified that on November 5, 2019, he was living in an apartment complex and Edna Parks was his next-door neighbor. On the evening of November 5, 2019, Box heard Whitehead yelling inside Parks's apartment. Box also heard banging on the wall inside Parks's apartment as well as "rumbling" near the door. Upon hearing these noises, Box opened his door to see what was happening. Box then heard Parks ask Whitehead to go home. Moments later, Whitehead exited Parks's apartment, stood on the stoop directly in front of his and Parks's apartment doors, looked at Box, asked Box what he was looking at, and struck Box in the face with a closed fist. After being struck in the face, Box fell backward into his apartment. Upon arising, Box noticed that Whitehead had placed his foot in his doorway. To prevent Whitehead from entering his apartment, Box placed both of his hands on his doorframe and started kicking Whitehead. During this exchange, Box grabbed his cane that he kept near the door and struck Whitehead with it. Whitehead then grabbed the cane and struck Box with it, causing him to fall to the ground again. While Box lay on the ground, Whitehead repeatedly

- 2 -

struck Box with his cane. Box managed to shut his door just as Whitehead took the cane and hit the shut door with such force that it dented the door. Box then called the police but remained inside his apartment during the entire altercation.

¶ 7        Parks, Whitehead's mother, testified that on November 5, 2019, she was living in an apartment located next door to Box. Around 7:30 p.m. that same night, Whitehead entered Parks's apartment upset and yelling. According to Parks, Whitehead smelled like he had been drinking alcohol earlier that day. Because Whitehead was so loud, Parks asked him to leave her apartment, and Whitehead responded by punching her apartment wall. As Whitehead exited the apartment, Parks heard him ask Box why he was standing in the doorway. Whitehead walked onto the stoop immediately in front of Box's apartment door, and Parks saw him make a hand gesture in Box's direction. Parks explained that, because she was standing in her own doorway, she was unable to see if Whitehead hit Box. Parks did, however, see Box hit Whitehead with his cane, after Whitehead moved his hand in Box's direction. Parks observed Whitehead take the cane from Box and hit him back. Thereafter, Whitehead walked to the sidewalk and yelled at Parks to "call the police." Parks explained that, although she never saw Whitehead hit Box, she informed the police that he hit Box because she was relying on what Box told her. She stated that she believed Box's recitation of what happened at the time.

¶ 8        Officer Robert Ogden testified that on November 5, 2019, he was dispatched to Box's apartment in response to a call about a disturbance. When Officer Ogden arrived, he noticed a sidewalk leading from the side of the street to the apartment building where the incident took place. After exiting his vehicle, Officer Ogden observed a loud and agitated Whitehead, who smelled strongly of alcohol, walking toward him with a bent cane in his hand.

¶ 9        At the conclusion of Officer Ogden's testimony, the State moved for leave to amend two of the aggravated battery counts from "public way"[1] to "public place of accommodation." Over defense counsel's objection, the Lake County circuit court granted the State leave to amend the counts. After amending the counts, the

---

[1]The charging instrument originally read, in pertinent part, that Whitehead was charged with aggravated battery "in violation of 720 ILCS 5/12-3.05(c) in that the said defendant, in committing a battery, knowingly caused bodily harm to Steven Box, other than by discharge of a firearm, while on a public way."

State rested. The defense moved for a directed finding of not guilty on all six counts. The court granted the motion as to the aggravated battery counts based on Box's disabilities but denied the motion as to the counts based on the offense occurring in a public place of accommodation and Whitehead committing the offense with a deadly weapon.

¶ 10      At the conclusion of the trial, the jury found Whitehead not guilty of two counts of aggravated battery with a deadly weapon but guilty of two counts of aggravated battery in a public place of accommodation. Whitehead was then sentenced to 42 months in prison to run concurrently, followed by a 1-year term of mandatory supervised released.

¶ 11                           B. Appellate Court Proceedings

¶ 12      On appeal, Whitehead argued, *inter alia*, that his conviction for aggravated battery should be reduced to simple battery where the State failed to establish that the stoop in front of Box's apartment door was a "public place of accommodation" within the purview of section 12-3.05(c) of the Code. The appellate court rejected Whitehead's argument and affirmed his conviction finding that the stoop immediately in front of Box's apartment door was a public place of accommodation within the purview of section 12-3.05(c) of the Code (2021 IL App (2d) 210104-U, ¶ 31) because "members of the public could approach Box's door and stand on his stoop" (*id.* ¶ 35). Specifically, the appellate court noted that Whitehead's access to the stoop was "unobstructed and unrestricted in any way" as a "point of ingress into the home." *Id.* ¶ 33. Additionally, the appellate court conceded that the stoop was curtilage of the home as defined by the fourth amendment but reasoned that whether the stoop is curtilage has "no bearing on this case" because prior cases have given no consideration to a location being curtilage when determining whether that location is a public place of accommodation. *Id.* ¶ 32. The appellate court further reasoned that, in addition to the stoop being curtilage, "society recognizes an implicit license allowing the general public to approach Box's door." *Id.* ¶ 33. In other words, the appellate court reasoned that categorizing the stoop as curtilage (which implicitly invites the general public to approach) strengthens its finding that the stoop is a public place of accommodation. This court allowed Whitehead's

appeal.

¶ 13                                  II. ANALYSIS

¶ 14        Whitehead maintains that his conviction for aggravated battery should be reduced to simple battery because the stoop upon which he stood when he committed the battery was not a public place of accommodation within the purview of section 12-3.05(c) of the Code. Therefore, the sole issue before this court is whether a stoop in front of the door of an apartment is considered a public place of accommodation pursuant to section 12-3.05(c) of the Code, such that a battery committed thereon would enhance the offense to aggravated battery.

¶ 15                              A. Standard of Review

¶ 16        Whether the stoop in front of an apartment is a public place of accommodation requires the court to engage in statutory interpretation, which presents a question of law that we must review *de novo*. *Board of Education of Chicago v. Moore*, 2021 IL 125785, ¶ 18 (statutory construction of a statute presents a question of law); *Rozsavolgyi v. City of Aurora*, 2017 IL 121048, ¶ 21; *People v. Stoecker*, 2014 IL 115756, ¶ 21.

¶ 17                   B. Interpreting Section 12-3.05(c) of the Code

¶ 18        The cardinal rule of statutory construction is to ascertain and give effect to the true intent of the legislature. *Illinois State Treasurer v. Illinois Workers' Compensation Comm'n*, 2015 IL 117418, ¶ 20; *Kunkel v. Walton*, 179 Ill. 2d 519, 533 (1997). The most reliable indicator of legislative intent is found in the statutory language, given its plain and ordinary meaning. *People v. McChriston*, 2014 IL 115310, ¶ 15. We are to strictly construe criminal or penal statutes in favor of the accused and take nothing by "intendment or implication beyond the obvious or literal meaning of the statute." *People v. Davis*, 199 Ill. 2d 130, 135 (2002). When construing a statute, courts are to assume that the legislature did not intend to produce absurd or unjust results. *Sheffler v. Commonwealth Edison Co.*, 2011 IL 110166, ¶ 77. When the statute contains undefined terms, we may use the aid of a

dictionary to ascertain the plain and ordinary meaning of those terms. *McChriston*, 2014 IL 115310, ¶ 15. We may also rely on prior cases construing those terms. *Atlantic Mutual Insurance Co. v. American Academy of Orthopaedic Surgeons*, 315 Ill. App. 3d 552, 561 (2000) (reviewing courts may consider "Illinois case law for guidance as to the interpretation" of undefined statutory terms). In addition to considering the language chosen by the legislature, the court should also consider the reason for the law, the evil to be remedied, and the purpose to be obtained thereby. *In re A.G.*, 325 Ill. App. 3d 429, 434 (2001).

¶ 19 Section 12-3.05(c) provides, in pertinent part, "A person commits aggravated battery when, in committing a battery, *** he or she is or the person battered is on or about a public way, public property, a public place of accommodation or amusement, a sports venue, or a domestic violence shelter." 720 ILCS 5/12-3.05(c) (West 2018).

¶ 20 The statute itself does not define "public place of accommodation or amusement"; therefore, we will rely on the aid of dictionaries to ascertain the plain and ordinary meaning of those terms. *McChriston*, 2014 IL 115310, ¶ 15. "Public place," according to Black's Law Dictionary, is "[a]ny location that the local, state, or national government maintains for the use of the public, such as a highway, park, or public building." Black's Law Dictionary 1351 (9th ed. 2009). Black's Law Dictionary defines "accommodation" as "[a] convenience supplied by someone, esp., lodging and food." *Id.* at 17. Similarly, Merriam-Webster defines "accommodation" as "something supplied for convenience or to satisfy a need: such as *** lodging, food, and services or traveling space and related services." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/accommodation (last visited Mar. 1, 2023) [https://perma.cc/59SU-7ZC6]. "Amusement" is defined by Merriam-Webster as "a means of amusing or entertaining," "the condition of being amused," and "pleasurable diversion." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/amusement (last visited Mar. 1, 2023) [https://perma.cc/K4N7-HUDG].

¶ 21 Considering these definitions, we hold that a "public place of accommodation or amusement" is a place for the use of the general public that is supplied for convenience, to satisfy a need, or to provide pleasure or entertainment. When we consider the stoop, which is the subject of this litigation, we find that it does not fit

within the purview of the dictionary definition of the individual words in the statutory phrase "public place of accommodation or amusement."

¶ 22    The commonly understood purpose of a stoop or step in front of a private dwelling is to provide convenient access to a home. However, while this convenience may be enjoyed by certain members of the public (such as invited guests or delivery personnel), the convenience is not provided to the public. The purpose of the stoop is for the owner or resident of the private dwelling to access his or her home. The fact that certain members of the public may access the stoop is secondary to the purpose of the stoop.

¶ 23    It is clear that, when enacting section 12-3.05(c) of the Code, the legislature was attempting to deter violence committed in public places of accommodation because it believed that batteries committed in public areas represent a more serious threat to the community than batteries committed in other places. *People v. Foster*, 2022 IL App (2d) 200098, ¶ 44; see *People v. Brown*, 2019 IL App (1st) 161204, ¶ 48 (a battery "presents a greater threat to society when done in a public place"); *People v. Lee*, 158 Ill. App. 3d 1032, 1036 (1987) ("[O]ur legislature was of the belief that a battery committed in an area open to the public constitutes a more serious threat to the community than a battery committed elsewhere." (Emphasis omitted.)).

¶ 24    Therefore, the intent of the legislature in enhancing the offense from simple battery to aggravated battery was to protect the public from increased harm in public places. The stoop in front of a private dwelling—even if that stoop is shared by a neighbor—hardly constitutes a public place. We believe expanding the definition of "public place of accommodation" to include the stoop, step, or small walkway in front of a private home would amount to an absurd or unjust result. *Illinois State Treasurer*, 2015 IL 117418, ¶ 39 (courts must construe statutes in a way that will avoid absurd, unreasonable, or unjust results).

¶ 25    Our research establishes that public accessibility, alone, is insufficient to transform a stoop, step, or walkway into a "public place of accommodation or amusement." Instead, a "public place of accommodation or amusement," at minimum, must refer to a place that is not only accessible to the public but is also a place where the general public is invited to enjoy a good, service, or accommodation being provided. Defining a stoop in front of a private dwelling as

a public place of accommodation or amusement would expand the reach of the statute beyond what is reasonable. Such expansion could potentially cause any portion of privately owned property that is remotely accessible to the public to be considered public property. For example, if public accessibility is the only qualifier, a private driveway, a private deck, or a private backyard that is unobstructed by fencing or some other barrier could be considered a public place of accommodation or amusement, such that a battery occurring thereon could be enhanced and become an aggravated battery.

¶ 26    We recognize that our appellate court has routinely interpreted "public place of accommodation" to mean an area made accessible to the public. However, we find the State's reliance on these cases misplaced.

¶ 27    For example, in *People v. Ward*, 95 Ill. App. 3d 283, 284-85 (1981), the defendant was found guilty of aggravated battery for an offense that occurred in a Holiday Inn parking lot. According to the *Ward* court, whether the parking lot "was actually publicly owned and, therefore, 'public property' rather than a privately owned 'public place of accommodation' is irrelevant; what is significant is that the alleged offense occurred in an area accessible to the public." *Id.* at 287-88. Since *Ward*, the appellate court has consistently interpreted "a public place of accommodation or amusement" to mean a place made available to the public. See, *e.g.*, *Lee*, 158 Ill. App. 3d at 1036 (finding that a parking lot outside a convenience store was a public place of accommodation—"[w]e see no logical or reasonable basis for interpreting the language of this subsection so as to distinguish between the premises within the 'public place of accommodation' and the parking lot immediately outside its door"); *People v. Logston*, 196 Ill. App. 3d 96, 100 (1990) (finding that the trial court committed harmless error when it instructed the jury that a tavern was a public place of amusement because it was open to a portion of the public—specifically, adults and not minors); *People v. Pergeson*, 347 Ill. App. 3d 991, 994 (2004) (relying on *Ward*, 95 Ill. App. 3d 283, and finding that an area 50 feet in front of a shopping mall entrance was indistinguishable from the hotel parking lot in *Ward* and was a public place of accommodation).

¶ 28    In 2022, the appellate court in *Foster* found that an office inside a gas station and convenience store was a public place of accommodation. 2022 IL App (2d) 200098, ¶ 48. In *Foster*, the office door was open during business hours, and the

office was regularly accessed by customers needing assistance. *Id.* Therefore, the *Foster* court found the office was a public place of accommodation, over the defendant's assertion that the office was not " 'meant for' " the public. *Id.* ¶¶ 46, 48. The fact common to all of these cases is the fact that the area where the offense occurred was associated with a business, which provided some good or service that met a need or offered a convenience to the general public. In the case under review, the stoop was not associated with a business, a park, a recreation center, or any other place providing a good or service for the benefit of the general public. While the stoop can be accessed by members of the public who approach the residence, accessibility without more does not convert a stoop in front of a private residence into a public place of accommodation or amusement for the general public.

¶ 29   Relying on many of the aforementioned cases, the State would have us adopt the definition of public place of accommodation or amusement to include "any and all locations made available for the convenience of its members or to otherwise satisfy their needs." Even if we were to adopt this definition, a stoop connected to a private residence still would not qualify as a public place of accommodation or amusement because it is not provided for the convenience of the general public. Members of the general public may use the stoop in limited circumstances, but the stoop is for the convenience of the private owner of the residence to access his or her residence. The fact that the general public can access something that is for private use does not transform it into a public place of accommodation or amusement. Concluding otherwise would yield unworkable and absurd results. *Illinois State Treasurer*, 2015 IL 117418, ¶ 39 (courts must construe statutes in a way that will avoid absurd, unreasonable, or unjust results).

¶ 30   Additionally, we are unpersuaded by the State's argument that, because the battery drew the attention of neighbors in the apartment complex and could have harmed more members of the public than Box, the stoop was a public place of accommodation or amusement. It is expected that neighbors in a residential neighborhood, specifically neighbors in the same complex, would bear witness to an offense taking place within that residential area. The fact that members of the community saw the offense does not automatically convert the stoop into a public place of accommodation or amusement any more than a battery taking place on a private deck viewed by residents in the neighborhood would make the private deck a public place of accommodation or amusement.

¶ 31    Moreover, the legislature did not intend for the term "public place of accommodation or amusement" to be so broadly construed as to include any place accessible to the public no matter how limited that access or minor the convenience. According to the statute, simple battery is enhanced to aggravated battery where the offense occurs "on or about a public way, public property, a public place of accommodation or amusement, a sports venue, or a domestic violence shelter." 720 ILCS 5/12-3.05(c) (West 2018). The statute provided a list of specific locations that could be accessed by members of the public. Therefore, to define "public place of accommodation or amusement" as any place accessible to the public renders every other clause of the statute superfluous. See *Yang v. City of Chicago*, 195 Ill. 2d 96, 106 (2001) (reasoning that statutes should be construed so that no term is rendered superfluous or meaningless). It would be meaningless for the legislature to identify specific locations that could be accessed by members of the public—"public way," "public property," "sports venue," or "domestic violence shelter"—if the legislature intended "public place of accommodation or amusement" to mean any location that is accessible to the public. See 720 ILCS 5/12-3.05(c) (West 2018).

¶ 32    Therefore, we hold that the accessibility of a location to the public, standing alone, is insufficient to transform a location into a public place of accommodation, nor can it be used to enhance an offense from simple battery to aggravated battery.

¶ 33                                C. Curtilage

¶ 34    Whitehead asserts that the stoop upon which the offense occurred is within the curtilage of the home as defined by fourth amendment jurisprudence. While the State does not expressly argue that the stoop is not curtilage, it maintains that the whether the stoop is curtilage is irrelevant to this court's analysis of whether the stoop is a public place of accommodation. We agree with Whitehead and find that the stoop is within the curtilage of the home. See *People v. Bonilla*, 2018 IL 122484, ¶¶ 25-27 (holding that the hallway inside an unlocked apartment building in the common area immediately outside the door of the suspect's apartment fell within the curtilage of the home); *People v. Burns*, 2016 IL 118973, ¶¶ 37, 44 (finding that the third-floor landing outside defendant's apartment door within a locked apartment building was within the "curtilage" of defendant's residence); see also *People v. Taylor*, 399 N.Y.S.2d 575, 576-77 (Crim. Ct. 1977) (finding that "the

hallway and porch or stoop of the defendant's two-family house are not public places," "[t]hat the area in which he was found is part of the curtilage of his home," and that a misdemeanor charge rather than a felony was appropriate). Our United States Supreme Court has concluded that "[t]he protection afforded the curtilage is essentially a protection of families and personal privacy in an area intimately linked to the home, both physically and psychologically, where privacy expectations are most heightened." *California v. Ciraolo*, 476 U.S. 207, 212-13 (1986). Recognizing the heightened expectation of privacy in the curtilage of the home, it is illogical for this court to conclude that a stoop, which is within the curtilage of the home, is a "public place of accommodation" under the statute. See *Illinois State Treasurer*, 2015 IL 117418, ¶ 39 (courts must construe statutes in a way that will avoid absurd, unreasonable, or unjust results).

¶ 35 Additionally, to interpret the aggravated battery statute in a way that the curtilage of a person's apartment would constitute a "public place of accommodation" would be inconsistent with the legislature's intent to enhance the penalty only for those batteries occurring in a public place. Simple battery is enhanced to aggravated battery in " 'circumstances under which "great harm might and usually does result." ' " *People v. Clark*, 70 Ill. App. 3d 698, 700 (1979) (quoting *People v. Lockwood*, 37 Ill. App. 3d 502, 509 (1976)). This subsection was "designed to deter the possibility of harm to the public." *People v. Handley*, 117 Ill. App. 3d 949, 952 (1983). This legislative purpose is not advanced by enhancing the penalty for a battery committed within the curtilage of an apartment. Given the facts of this case—Whitehead standing on the stoop at the doorway of Box's apartment, while Box remained inside his apartment—there was no possibility of harm to the general public. Therefore, the legislative purpose is not furthered by elevating simple battery to aggravated battery.

¶ 36                                    III. CONCLUSION

¶ 37 Whitehead received a sentence of 42 months for his aggravated battery conviction on June 22, 2020. Simple battery is a Class A misdemeanor (720 ILCS 5/12-3 (West 2018)), which carries a sentence of imprisonment of less than one year (730 ILCS 5/5-4.5-55 (West 2018)). Whitehead challenges only that elevation, from simple battery to aggravated battery. Because Whitehead has received a 42-

month sentence that exceeds the less-than-1-year sentence imposed for a simple battery conviction and because he has already served 40 months, there is no need to remand this cause to the circuit court for resentencing. Accordingly, we (1) reverse the judgment of the appellate court, (2) vacate Whitehead's conviction for aggravated battery, (3) enter a conviction for simple battery, and (4) direct the clerk of the supreme court to issue the mandate *instanter* but stay it for seven days to provide the State with an opportunity to file a petition for rehearing.

¶ 38      Appellate court judgment reversed.

¶ 39      Circuit court judgment affirmed as modified.

¶ 40      JUSTICES CUNNINGHAM, ROCHFORD, and O'BRIEN took no part in the consideration or decision of this case.